SPENCE, Admrx., Plaintiff-Appellee, v. COMMERCIAL MOTOR FREIGHT, INC. OF INDIANA, Defendant-Appellant.

Ohio Appeals, Second District, Preble County.

No. 130. Decided April 6, 1954.

Walter H. Earley, Eaton, Horace W. Baggott, Dayton, for plaintiff-appellee.

Waldo E. Young, Eaton, for defendant-appellant.

## OPINION

By HORNBECK, J.:

This is an appeal on questions of law from a judgment for the plaintiff against the defendant in the sum of $42,000.00 entered on a verdict of a jury.

The action was for damages for the wrongful death of plaintiff's decedent because of the negligence alleged in plaintiff's amended petition. Plaintiff's decedent died by reason of a collision between a milk truck, which he was driving, and a truck driven by the agent of defendant, Commercial Motor Freight, Inc. of Indiana. Both trucks were moving westwardly on U. S. Route 35, and the collision occurred about three and one-half miles west of Eaton, at a point about 219 feet west of the intersection of U. S. Route 35 and Eaton and New Hope Road.

After the impact, the milk truck came to rest in a cornfield on the north side of U. S. Route 35, the driver having been thrown from the truck. The defendant's truck moved a distance of about 165 feet after the collision, and came to rest on the berm on the north side of the road. Plaintiff's decedent, prior to the collision, had made delivery of milk to the home of Mrs. Norma Matheny, who lived on the south side of U. S. Route 35. She was in her kitchen, from a window of which she had a limited view of Route 35 to the west. She observed plaintiff's decedent moving from her home toward the north side of the road and when last she saw him his vehicle was astride the center thereof. She then looked away and in a

very short period of time heard a noise which may have been a collision between the trucks. She was the principal witness and, indeed, as to certain material physical facts, the only disinterested witness. Other conclusions are largely circumstantial, to be drawn from photographs of the effects of the collision as appearing upon the trucks, the location of skid marks on the highway, the movement of the trucks before and immediately following the collision, and their position when they came to rest.

Plaintiff, in her petition and reply, set up four specifications of negligence. By the pleadings, the issues were drawn as to the negligence of the defendant in any one of the four particulars alleged, and the contributory negligence of plaintiff's decedent.

The action was instituted against Commercial Freight Lines, Inc., Indianapolis, Indiana. Summons was served upon the Secretary of State of Ohio and by sending to the defendant named, by registered mail, return receipt requested, a copy of the summons and of the service upon the Secretary of State. The receipt attached was returned, signed "Com. Motor by O. K. Riggle."

Thereafter, Commercial Motor Freight, Inc. of Indiana, moved to quash service of summons upon three grounds:

1. That the defendant named is an Ohio corporation.

2. That the service could have been made upon the defendant as provided by law in the State of Ohio and not upon the Secretary of State.

3. That any attempted service upon the named defendant herein under §6308-2 GC, is unlawful and void.

Succeeding this motion, plaintiff moved for leave to amend her petition, praecipe for summons, summons and return of summons, by correcting and changing the name of defendant in each instance to read "Commercial Motor Freight, Inc. of Indiana."

The grounds of the motion were that the correct corporate name of the defendant sought to be sued is "Commercial Motor Freight, Inc. of Indiana," and a misnomer of the defendant in the petition.

The Court sustained plaintiff's motion and overruled the defendant's motion to quash. This action is the first error assigned.

The trial judge, passing on the motions, filed a written opinion in which he found that the amendments sought to be made were authorized by §6308-2 GC; that the law contemplated two methods of service, and that the plaintiff had the right to avail herself of either. He found that the corporate body, Commercial Motor Freight, Inc. of Indiana, had been apprised of the action filed and would lose no rights by being subjected to the jurisdiction of the court. With this conclusion we are in accord. We doubt if it is necessary to go beyond the letter of the statute to determine the question. Sec. 2309.58 R. C. (§11363 GC), insofar as applicable, provides:

"Before * * * judgment, in furtherance of justice and on such terms as it deems proper, the court may amend any pleading; process, * * * by correcting a mistake in the name of a party or a mistake in any other respect, * * *, when the amendment does not substantially change the claim or defense, * * *."

There can be no doubt as to the right to amend by changing the name of the defendant in the petition. The only question of substance is whether or not the court was authorized to overrule the motion to quash in view

of the form of the service. There is similarity between the names "Commercial Freight Lines, Inc." and "Commercial Motor Freight, Inc." The former is an Ohio corporation, the latter is an Indiana Corporation. Carried as a part of the title in the petition was "an Indiana corporation" and the petition averred that the defendant was an Indiana corporation. It is manifest that the entity sought to be reached in the petition, praecipe and by the service, was the Indiana corporation. It was actually apprised of the action by the registered letter which it accepted. The intent of the plaintiff as to the corporation sought to be subjected to the jurisdiction of the court is clear, from all the facts developed. The entity sought to be reached was notified in regular manner, subject only to the disparity in name. The intent of the service of process was accomplished.

It is held in **Gas Company v. Ironton, 107 Oh St 173,** that the discretion vested in the court by §11363 GC, should be exercised in the furtherance of and not for the purpose of defeating justice and that under authority of §10214 GC, the provisions of §11363 GC, are to be liberally construed; **Douglas, Admx. v. Daniels Bros. Coal Company, 135 Oh St 641.** In **State ex rel. Heck v. Sucher, 77 Oh Ap 257,** the court held that in furtherance of justice the court may order a defective summons amended, without requiring amended summons to be served, if it be shown that the party served will not be prejudiced thereby. The court in its opinion called attention to the fact that §11363 GC, had special application to process and that it authorized correction of a mistake in any other respect. The court, at page 259, said:

"It (§11363 GC) further authorizes an amendment of a mistake in any respect. Broader and more efficient language could hardly have been used to vest this power. The only limit seems to be to cases where an amendment would not be in furtherance of justice."

**Burton v. Buckeye Insurance Company, 26 Oh St 467,** is cited, where the summons was permitted to be amended although it contained the name of the insurance company but the defendant was actually served. Many cases are cited and commented upon by the plaintiff, but it would be a work of supererogation to cite and comment upon them. Suffice it to say that they support, as a matter of law, the action of the trial judge here.

Defendant cites and relies upon **Uihlein v. Gladieux, 74 Oh St 232.** There are several distinguishing differences between this case and the instant cause. The action under review in the cited case required consideration of a suit originally instituted in a justice of the peace court wherein the jurisdiction must clearly appear upon the record. The enabling provisions of §2309.58 R. C. (§11363 GC), have no application, which section defines procedure in the common pleas court. The case was adjudicated upon error proceedings. There was no attempt in the original action to name the individual in the title, against whom judgment was rendered. There was no observance of the statutory requirements as to what the summons shall contain when the name of a party is unknown. There is no showing that the party against whom the judgment was entered was served personally. And, finally, the judgment was entered against the defendant with the finding that the name of that defendant was unknown. The court held that the facts upon which the judgment of the justice of the peace court were predicated must be shown affirmatively and that they did not appear.

**Hendershot v. Ferkel, 144 Oh St 112.** The court in this case supported the contention of appellee that service on the defendant had been accomplished under §6308-2 GC (§2703.20 R. C.). The statement of Judge Matthias on page 120 of the opinion is to the effect that service of process by registered mail, as provided in §6308-2 GC, defining the essentials of service of process upon non-residents, should be strictly followed in order to invest the court with jurisdiction. Judge Hart in the dissenting opinion stresses the determinative question which was before the court, namely the essential steps to be taken by the officer to whom the writ is directed. This case is not authority upon the question under consideration here.

The final case cited is **Ksenich v. Lorain Street Railway Company, 10 Abs 357, 359.** There the action was instituted against the Lorain Street Railway Company. It should have named the Lorain Street Railroad Company. The service of summons was upon a train dispatcher, who the Sheriff understood was an agent of the Railway Company but who, according to the evidence, was in fact a train dispatcher of the Railroad Company. The answer was filed in the name of the Railway Company, counsel appeared solely for that company, and the cause went to trial and judgment upon the situation thus developed. Judge Washburn found that the record failed to disclose "who the officers of the companies are or what relation, if any, one company has to the other." It was held that there was before the court a defendant company over which the court had jurisdiction, namely, the Railway Company which was named in the petition, as defendant, upon whom service was had; that it did not move to quash the service; that the plaintiff, after a jury had been sworn, did not avail himself of the right to withdraw a juror and properly present the right party before the court, but insisted that he had a right then to substitute, for a party properly sued and in court, a party not sued and not in court. A statement of the operative facts is sufficient to mark the differentiation between the law pronounced in the cited case and that controlling in this case.

The first assignment of error is not well made.

The second, third, fourth and fifth assignments of error are directed to the insufficiency of the evidence to carry the case to the jury. Without comment, we hold that no one of these assignments is well made.

The sixth assignment is that the verdict should be set aside because of irregularity in the proceedings on the part of plaintiff-appellee preventing the defendant-appellant from having a fair trial. This assignment is not supported by the record.

The seventh assignment is that the verdict of the jury and judgment rendered thereon is excessive, and given under the influence of passion or prejudice. The verdict is large, but in view of all the circumstances appearing, the depreciated value of the dollar, the comparative youth of plaintiff's decedent, his expectancy of life, his earning capacity, his varied abilities. his steadiness, services to his wfe and son, the damages may not be said, as a matter of law, to be excessive.

The conduct of the case does not suggest any occurrence which would arouse the passion or produce prejudice on the part of the jury. The cause was exceptionally well tried and unusually free from any manifestation of feeling on the part of counsel.

The eighth assignment of error is predicated on the refusal of the

court to set aside the verdict and judgment on the ground of newly-discovered evidence.

Supporting appellant's motion for a new trial, on the basis of newly-discovered evidence, affidavits of the driver and passengers in an automobile which was moving from Eaton to Richmond, Indiana, were offered to the effect that as the car left the western limits of the village it passed defendant's truck. Later, the car was stopped to pick up one of the passengers. This stop was made about three-tenths to four-tenths of a mile east of the intersection of Eaton and New Hope Road with U. S. Route 35; that the car was parked partially on and partially off the right or north side thereof; that while the car was thus standing, defendant's truck passed; that when they first saw the truck it was on its right side of the road, and when it passed them the driver sounded his horn, turned to the left at a speed of about forty-five miles an hour, passed them and moved over to his right side of the highway; that as he approached and passed them he was operating the truck in the proper manner. Counsel for defendant also made an affidavit tending to show that he had exercised diligence to find witnesses from whom any probative evidence could be secured; that he did not learn of the driver of the aforementioned automobile and the passengers until some time after the trial of this cause. Contra these affidavits, plaintiff offered three affidavits, the purport of which was that the witnesses from whom the purported newly-discovered evidence would come were known to affiants before trial, and that their presence was likewise well known to many persons in Eaton.

The evidence, if accepted, would have been slightly probative of the fact that defendant's driver was not asleep at the time of the collision with the milk truck. However, we doubt if the defendant may make this contention because counsel did not interrogate its driver on this issue, notwithstanding an extended cross-examination of the driver of defendant's truck tending to show that he was exhausted, that he had had little sleep the night before the trip on which plaintiff's decedent was killed, that he had been on duty long hours and driven a great distance, all of which it could be argued tended to show that he may have been asleep when the collision occurred. Independent of this aspect of the proffered evidence, the motion could have been determined on the question whether or not the defendant had used due diligence to secure the evidence. On this question the trial judge was authorized to exercise wide discretion and unless it clearly appears that it has been abused, a reviewing court should not interfere. **Taylor v. Ross, 150 Oh St 448.** We can not hold that the trial court abused its discretion.

The ninth assignment of error relates particularly to errors occurring during the trial, the admission of evidence offered by plaintiff, the rejection of evidence offered by the defendant, and errors in the charge of the court. We find no error in any of the particulars assigned, and will discuss only that one which relates to the admission of expert testimony on the measure of damages.

A Mr. Wilbur G. Kennedy, agent of the Northwestern Mutual Life Insurance Company, testified on the subject of annuities. As a basis for his computation, he was given the annual earnings of decedent, his age and expectancy of life. Decedent's earnings at the time of his death were shown

to be in excess of $3,000.00 a year. Mr. Kennedy was permitted to testify as to the cost of a straight annuity which would produce a monthly income of $250.00, or a total of $3,000.00 per year. The lowest cost of such annuity was $84,826.45; highest $86,963.75. He also fixed the cost of a straight annuity, producing $200.00 per month, which ranged from $67,861.20 to $68,771.00 He gave like computation for an income of $350.00 per month. He also gave costs of annuities on smaller units, even down to a single premium which would be required to produce $10.00 a month.

Appellant insists that the court erred in admitting this testimony, and cites in support of its position of **Bartlebaugh v. The Pennsylvania Railroad Company, 150 Oh St 387.** In the cited case the cost of the annuity, which was there held to be erroneously admitted, related to a refund annuity as distinguished from a straight annuity, the subject of the testimony here.

The witness carefully explained the difference between a refund annuity and a straight annuity. He stated that certain profit of the company was added to the cost. Counsel did not interrogate him to determine the amount of this profit.

The general charge of the court was a strong and correct presentation of the law  The issues were carefully defined and the respective claims of the parties properly delineated. The charge as to the measure of damages was full and correct. It followed largely the law announced in **Sherer v. Smith, 155 Oh St 567.** The trial judge explained to the jury the purpose for which the testimony as to the annuities was received. In our judgment it afforded the jury some assistance in determining the ultimate question for its decision as to the measure of damages.

The theories of the parties of this case are clearly defined. The plaintiff's claim was based upon the contention that the driver of defendant's truck had a clear view of plaintiff's decedent on the right side of the road for a distance which assured him ample time and opportunity to avoid striking the milk truck. In this contention she was supported by the testimony of Norma Jean Matheny and by the skid marks on the road from which it could be inferred that the collision occurred when plaintiff's decedent was over on to his right side of the road and moving forward in that lane.

The contention of the defendant was that without warning the plaintiff's decedent moved suddenly into the path of defendant's truck and thereby he was denied the opportunity to stop his truck in time to avoid striking the milk truck. In this position the defendant was supported by the direct testimony of Jess Swafford, the driver of the truck, and from certain physical facts which tended to support its contention. It is also urged, and there was some evidence tending to prove, that Norma Jean Matheny could not have seen the movement of the milk truck as she testified.

The jury evidently accepted the testimony of the plaintiff and her witnesses.

We find no error assigned established, or if established in any degree that it was prejudicial to the rights of the defendant in the trial of this case.

The judgment will be affirmed.

WISEMAN, PJ, MILLER, J, concur.