Kinkade, J.
 

 This is an action for damages resulting from negligence, personal injuries inflicted, and personal property destroyed by the same negligent conduct. Amount sought to be recovered, $3,590.
 

 An automobile and a railroad locomotive collided at a right angle grade crossing. The highway ran east and west and the railroad north and south. The automobile was a Ford touring car, with side curtains buttoned in place. The car was driven by its owner, the defendant in error, Rohrs. Six children were in the car, one in the front seat
 
 *495
 
 with the driver, and the other five in the back part of the car. The car had started from a point not over 100 feet west of the crossing, and was driven toward the crossing in low gear and at a speed not exceeding 5 or 6 miles an hour, and, after passing a point 20 feet west of the railroad track, the speed of the car was slowed down. The locomotive was backing north toward the crossing at a speed of not to exceed 8 miles an hour, and was pulling a box car. The employes of the railroad company in charge of the engine and car. were performing a switching operation, and were intending to pull the car just about onto the highway crossing, which would place the engine slightly to the north of the crossing and bring the south end of the car north of the switch point of a side track that was near the south side of the highway; the intention of the engineer being to there reverse the engine and shove the box car to the south on a side track. In order to accomplish the purpose in hand, steam had been shut off from the engine, and it was running of its own momentum just prior to the accident, and, for the purpose of checking the engine to a lower speed, a service application of the air brakes had been made just before the collision occurred. A little prior to the collision the emergency power of brakes was applied.
 

 Sixty-eight feet south of the highway and fifteen feet west of the railroad track was a small hand car house which obscured the view of a traveler going east on the highway toward the railroad track for a few moments of time while passing-a point a little more than 20 feet west of the
 
 *496
 
 railroad track on the highway. From any point on the highway west of the crossing the railroad track could be seen for 68 feet south of the crossing. After passing this 20-foot point, there was nothing to the south to obscure the view of the traveler on the highway coming' from the west, and he could see plainly past the hand car house, immediately after passing the 20-foot point on the highway west of the crossing, to a point at least 243 feet to the south. The engine was a local freight engine that passed this point twice every day in the handling of local freight, and very frequently did switching in this vicinity, the same in character as was taking place this day.
 

 The accident occurred at 8 o’clock in the morning on the 8th day of October, 1923. The weather was clear, and no feature of the weather in any degree contributed to produce the accident that happened. The owner of the automobile had lived for more than 3 years within about 100 feet of this crossing, where he carried on the business of a general store, with living quarters in the same building. He was thoroughly familiar with all the surroundings, and received freight at this point, carried on this same local freight, while running his store, two or three times a week. Before operating the store he had lived on a farm. He testified that when he left the store building to drive toward this crossing he looked both ways, north and south, for the approach of trains. Before reaching the point opposite the hand car house, he could see west of the hand car house to a very considerable distance to the south on the railroad tracks. He testified that he kept up a
 
 *497
 
 continual looking to the north and to the south for railroad trains as he drove eastward on the highway, and that he particularly looked to the south as well as to the north after passing the point on the highway 20 feet west from the track, at which time his line of vision south would fall east of the hand car house, so that that building in no wise further obstructed his view. He also testified that he listened for the coming of trains, and that he heard no signals given. One of the occupants of the car testified that Rohrs looked to the south after he passed the 20-foot point mentioned.
 

 It is entirely clear from the record that the automobile was traveling at a very low speed, at no time exceeding 5 or 6 miles an hour, and it is equally clear that the locomotive pulling the box car was backing north at a speed not to exceed 8 miles an hour, and probably not more than half of that at the time of the collision. The driver of the automobile, although saying that he had kept up a continual observation to the north and to the south as he drove toward the crossing, stated that he did not see the locomotive until it was just ready to strike the machine. He was asked and answered these questions:
 

 “Q. At the time you were 15 or 20 feet from the track, what did you do? A. Looked, watched both ways.
 

 “Q. Did you do anything else? A. Yes, sir.
 

 “Q. What did you do? A. Slowed a little down, then I went on.
 

 “Q. State whether or not you listened? A. Yes, sir.
 

 
 *498
 
 “Q. Did yon hear a locomotive bell or a whistle? A. No, sir.
 

 “Q. Did you hear either? A. No, sir.
 

 “Q. At the time your front wheels struck the crossing, what occurred? A. The train hit me just as I seen it; just took me just that quick; she come into us.
 

 “Q. How far was the car from your automobile at the time you first noticed it? A. She was right on to us; just as quick as I seen it she hit us; we was gone down the line.”
 

 He testified that the locomotive stopped after dragging his car 30 or 40 feet. It is entirely self-evident from the testimony produced on the part of the plaintiff that when he was 20 feet west of the railroad track on the highway, the locomotive backing, tender ahead and pulling the box car, could not have been to exceed 50 or at the very most 75 feet south of the crossing, and in full view of the driver of the automobile, if he was looking to the south at the time or at any time after he passed the point on the highway 20 feet west of the railroad track. Had the engine been any further away, the collision would not have happened.
 

 The petition in this case alleged negligence on the part of the railroad company in three respects:
 

 First. In the failure to give signals of approach.
 

 Second. In driving the locomotive to and across the highway at an excessive rate of speed.
 

 Third. Obscuring the view to the south by building the hand car house in the place where it was.
 

 The trial judge excluded from the consideration of the jury, and very properly so, the negligence charged with respect to excessive speed of engine
 
 *499
 
 and also the allegations with reference to obscuring the view by the maintaining of the hand car house in the position where it was. There was no other course for the court to pursue, because there was no evidence to sustain either of these grounds of negligence. This left the case to be submitted to the jury on the negligence alleged of not having given signals. The evidence offered on behalf of .the plaintiff tended to show that signals were not given, while the evidence offered on the part of the railway company tended to show that proper signals were given by both bell and whistle. Under the evidence in the case the jury might have found either way on this charge of negligence with respect to omission to give signals.
 

 The plaintiff in his petition scheduled his damages as follows:
 

 Pain and suffering $2,000.00
 

 Loss of labor to the time of filing this petition, 185 days, at $4 per day 740.00
 

 Loss of use of automobile 500.00
 

 Loss of automobile by destruction 350.00
 

 Total $3,590.00
 

 The plaintiff testified that he had been quite seriously injured himself, and that many of the effects of the injuries still abide with him. The testimony of the doctor who examined him after the injury, and treated him once at Rohrs’ home, and saw him a few times at his office, was to the effect that the small toe on one foot was crushed, and that in other respects he needed temporary treatment in the shape of liniments and the like. The doctor testified that he saw nothing permanent
 
 *500
 
 in his injuries, and that his services in treating him would not be of more value than $12 or $15. It developed that the automobile was entirely-destroyed by the collision, and so the court eliminated the item of $500 for loss of use of the automobile, and left the jury only to consider the remaining items, aggregating $3090. The jury returned a verdict in favor of Rohrs for $250.
 

 The value of the automobile, as shown by an average of evidence offered, was about $230; the only evidence on this subject coming from two witnesses in behalf of the defendant, both of whom were qualified to testify on the subject, one placing the value at $275 and the other at $190.
 

 Motion for a new trial was overruled, and judgment entered on the verdict, and this judgment was affirmed by the Court of Appeals.
 

 There is certainly nothing new to be said with respect to the duty of a traveler upon a highway when approaching a steam railroad grade crossing. This duty has been defined many times by this court and by many other courts, and it is that the traveler must look and listen for the approach of trains before crossing, and furthermore that he must look and listen at a place and in a manner that will make the looking and listening effective. In this case the plaintiff appreciated this duty at the trial, and knew that he could only recover in the event that the jury found he had looked and listened, and he testified several times that he kept up a continual looking both ways, and that, after he got east of the point on the highway 20 feet west of the railroad, he slackened his car that he might better look and better listen for the com
 
 *501
 
 ing of trains, and that, having done this, he did look and did listen, and he then, went ahead, not at an increased speed, bnt at the same speed. He testified that it was his regular custom to drive over this crossing with his car in low gear, and yet he said that he did not see the engine until his front wheels were just at the west rail, when he was hit by the northwest corner of the tender of the engine. It was broad daylight, and the record shows conclusively that the engine could not have been more than 50 or 75 feet away at any time after the driver of the automobile had passed the point on the highway 20 feet west of the railroad track. One of the witnesses who was in the back of the car testified that she screamed when she saw the locomotive, and that she saw it just before it struck them, and Rohrs testified that when this girl screamed then he saw the engine, and he- said that it was just in the act of striking him at that ■ time. Rohrs offered no explanation why he had not seen the on-coming train prior to that time.
 

 It is said that with this evidence the case must go to the jury to determine whether Rohrs did look and listen for the approach of trains from the south, and, if the jury find that he did look, then, even though he did not see, still he might recover. Something has been said in the case about the driver of the automobile having weak eyes. There is nothing in that claim at all. He has worn glasses, according to his own testimony, for 9 of 10 years. "When asked whether he wore them for farsightedness or nearsightedness, he said he wore them for both purposes. When asked
 
 *502
 
 whether he left the farm because his eyes were weak, he said, “No,” and there is not the slightest shadow of a claim in the record that there was anything the matter with his eyes that would have prevented him seeing this engine. He does not claim that at all.
 

 The jury evidently discounted, by about 100 per cent., Rohrs’ own testimony as to the extent of his personal injuries, for which he claimed $2,000, and as to his loss of 185 days time, for which he claimed $740. The verdict, $250, was only the fair value of the automobile prior to the accident. Defendant conceded that the automobile was of no value after the collision. Considering the amount of the verdict as compared with the damages sought to be recovered by Rohrs, only about 8 per cent., it is quite significant that he did not ask for a new trial or at least consent to the granting of defendant’s motion for a new trial.
 

 Surely it will not do for one to claim the right to recover simply because he has looked and did not see, if the conditions are such that, had he looked, he must have seen. When he says he did look, and the conditions establish the fact that any one who looked would have seen, then, if he says he did nof see, his own evidence establishes the fact that he did not look, though he may think he did. To hold otherwise would simply be a manifest absurdity, and the doctrine that the traveler in a vehicle upon the highway when coming to a railroad grade crossing must look and listen might as well be abandoned if one so placed, in broad daylight, can say that he looked in a given direction where there was a locomotive moving toward the
 
 *503
 
 crossing, and not farther than 75 feet away, and that he conld not see it. It would only he a trifle more absurd for a traveler on a highway to drive into the side of a train that was crossing the highway, and then seek to recover on the ground that signals had not been given, and that he looked straight ahead to see if there was any obstruction, and also looked to the right and to the left on the crossing, and he did not see any when he was within 20 feet of the crossing, and so he drove on into the side of the moving train, with serious injuries resulting to himself and his automobile. If he may look to the right with an engine within 75 feet of him and not see it, why should he not be permitted to recover if the train was standing on or moving across the highway right in front of him and he did not see that? Where the trial court is requested to charge that it is the duty of a traveler upon the highway to look and listen before going upon a steam railway grade crossing, it is error for the court to refuse to so charge, and in lieu thereof to charge the jury only that the traveler on the highway must exercise ordinary care for his own safety before going upon a steam railroad crossing. The duty is definite, and is that he must look as well as listen, and that he must look from a point and at a time that will make the looking effective to apprise him whether danger is near or not.
 

 In view of the undisputed evidence in this case as to Rohrs ’ negligence, the trial court should have granted the motion to direct a verdict for the defendant. The judgments of the lower courts will be reversed, and, rendering the judgment that
 
 *504
 
 should have been entered in the court of common pleas, final judgment will be here rendered in favor of the plaintiff in error.
 

 Judgments reversed, and judgment for plaintiff in error.
 

 Marshall, C. J., Jones and Day, JJ., concur.