Kinkade, J.
 

 The defendant in error Emil Sebesta brought an action in the court of common pleas of Cuyahoga county against the plaintiff in error, the Cleveland Railway Company, and one George D. Redmond, to recover damages resulting from a personal injury which was caused, as alleged in the petition, by the negligence of the two parties named as defendants. The injury occurred at about 6:15 a. m., on July 7, 1926. It was broad daylight, and there were no conditions of weather present which in any way tended to produce the accident which happened. At the close of the evidence offered by plaintiff in chief, the defendants respectively moved the court to direct the jury to return verdicts in their favor. These motions were granted by the trial judge, and judgments were entered accordingly in favor of the defendants. These judgments were reversed by the Court of Appeals. The railway company prosecutes error in this court.
 

 At the time of the injury, Sebesta was riding as a passenger in one of the street cars owned and operated by the railway company. The street car was pulling a trailer, and was traveling east on Euclid
 
 *28
 
 avenue in the city of Cleveland. Sebesta had entered the car at East 105th street, intending to ride to his place of work, which was located near the intersection of East 116th street and Euclid avenue. The regular stop of the car at 115th street was the stop nearest to the place of his employment. The next regular stop was at 118th or 119th street. As the car approached 115th street, Sebesta pushed the signal button to advise the conductor that he desired to leave the car at that street. After so signaling the conductor, Sebesta walked to the center of the car and stepped down onto the middle step of the three steps inside the car, leading to the exit door, which was in the middle of the side of the car. He continued to stand in this position ready to leave the car promptly as soon as the car came to a full stop at 115th street, and the door was opened by the conductor. While Sebesta was so standing, he looked back to the wést through the rear end of the car to ascertain what, if any, vehicles were approaching from the west. He testified that his view was somewhat obstructed by the trailer car.
 

 The conductor of the car was stationed at a point near the exit door, and could easily have observed the position of Sebesta as the car was approaching 115th street, but at that particular time the conductor had his face turned toward the front end of the car, and apparently had not noticed Sebesta standing near the exit door. The car came to a full stop at 115th street, but the conductor did not then open the exit door. After a brief halt of the car, the conductor signaled the motorman that the car was ready to proceed, and the car started forward. As the car moved forward, Sebesta called out the word
 
 *29
 
 “Here!” intending thereby to forcibly call the conductor’s attention to the fact that the door had not been opened, that he had not been given an opportunity to alight, and that he still desired to leave the car at that point. The conductor, having his attention thus called to the position of Sebesta, at once signaled the motorman to again stop the car. The motorman responded promptly, and the car again came to a full stop at a point not over 75 feet east of the point at which the first stop had been made, and, after the car had come to the second full stop, the conductor opened the exit door and the car stood still and the door stood open until after Sebesta had stepped out. Sebesta testified that while riding on the step he had his hands gripping the handholds that are on both sides of the door for the use of passengers entering or leaving the car. He says that between the first and second stops he looked to the west again through the rear and the side of the car, as far back as he could, and saw no vehicles coming. When the door was opened, he did not lean his head out of the door so that he would have a view to the west along the outside of the car. As he stepped out of the car, he was facing south. He testified that he turned his eyes to the west as far as he could without turning his head, but did not turn his face to the west so as to look in that direction outside of the car. As he stepped one foot on the pavement, and was just lifting the other from the step, the automobile of Redmond struck him. The record discloses that Sebesta was probably struck by the left front fender and the left front light of the car. The collision knocked him down. He fell on a line about midway between the front wheels of the automobile.
 
 *30
 
 The left front wheel may have passed over his leg. Neither front wheel passed over his body. He was not dragged upon the pavement by the automobile. He testified that when he was picked up he was not over two feet from the door of the car through which he stepped onto the street, and the car remained standing at this stop until after Sebesta was picked up. The owner and driver of the automobile, Redmond, with the assistance of another man who was present, pulled Sebesta out from under the front end of the automobile, picked him up and placed him in the automobile, and Redmond drove with him forthwith to the hospital. Both of the bones in his right leg were broken midway between the knee and ankle joints, and he received other injuries of a serious character.
 

 The negligence charged against the railway company was the failure to afford Sebesta an opportunity to leave the car at the first stop; the stopping of the car the second time at an irregular and dangerous place; the failure to keep a proper lookout for vehicular travel upon the street near the second stop; the opening of the exit door at the second stop without knowing whether approaching automobiles or other vehicles rendered the situation dangerous to passengers leaving the car at that time and place; and, further, that the company was negligent in not warning Sebesta of the danger incident to leaving the car at this second stop. He avers in his petition that the company knew or should have known of such danger, but does not allege in his petition that he did not know of such danger, nor did he offer any evidence tending to prove that he was not fully aware of the dangers, if any, which attended the situation.
 

 
 *31
 
 Sebesta called three witnesses other than himself to support his cause of action. His first witness, the defendant Redmond, the owner and driver of the Ford coupe which collided with Sebesta, was called for cross-examination and testified very fully as to all the facts incident to the injury. Sebesta testified in his own behalf with respect to the same facts. The testimony of Sebesta and Redmond tallies almost exactly in nearly every detail concerning what took place outside of the car. They both agree that Sebesta was facing south as he stepped out of the car, and that he did not look to the west on the outside of the car. Their testimony is in perfect accord that Sebesta was struck by the automobile at the instant that he stepped onto the pavement. The facts upon which these two witnesses are in full accord are decisive of this case. The only other witnesses that were called were two physicians, who knew nothing of the facts attending the accident and were called to testify only as to the extent of the injuries.
 

 The testimony of Sebesta himself, all of it taken as true and given the most favorable construction that can be placed upon it in his behalf, does not tend to prove actionable negligence on the part of the railway company. The failure to open the exit door at the first stop was an omission of duty on the part of the conductor that entailed some little inconvenience and a trifle of delay upon the passenger, but that omission of duty inflicted no injury upon the passenger. It was an unfortunate oversight on the part of the conductor, which he and the passenger involved undertook to correct in the only practicable way in which it could be corrected, and
 
 *32
 
 with the least possible delay. At the second stop, the door was promptly opened by the conductor, but not a word was said to Sebesta about leaving the car at that point. No word passed between the two men. Sebesta said in his testimony that he did not care to argue with the conductor after the door had been opened. He said he knew it was his right and privilege to remain upon the car and ride to the next regular stop if he had wished to do so. He made it entirely clear to the conductor by his actions that he did not desire to do anything of that kind.
 

 It is entirely self-evident, made so by the positive testimony of Sebesta himself, that if he had halted but a moment in the doorway of the car at the second stop, and glanced to the west, he must have seen Redmond’s automobile in dangerous proximity to’ that door. It is not disputed that the automobile stopped in less than the length of itself after striking Sebesta. There is no evidence in the record to show that there was any congestion of.vehicular traffic upon that street at that time and place. If there had been any such condition there, it would have been seen by Sebesta as he stood looking out of the door before the door was opened. There was evidence tending to show that another automobile was parked at the south curb of the street about opposite the coupling between the street car and the trailer at the time of the accident. Redmond testified that he passed between that car and the street car, in explaining why he was driving so close to the side of the street ear. Sebesta did not testify that he even saw this other car parked at the curb. There is no evidence tending to show that any car
 
 *33
 
 other than Redmond’s was passing the street car while the car was standing at the second stop. Sebesta, while riding in the car, had every opportunity that the conductor had to ascertain whether any motor vehicles were approaching from the west and were in dangerous proximity to the exit door of the car as it was opened; and when Sebesta was standing at the open door, holding onto the handles of the door, and before stepping out upon the street, his position was such that it was far easier for him to know the condition of travel on the street than it was for the conductor at his position inside the car to know such facts. Sebesta was apparently in full possession of his faculties, physical as well as mental.. He was neither an aged or infirm person, nor was he a child, and no one noting his actions as described by himself would be led to think that he needed or desired any information or caution with respect to the manner in which and the time at which he should leave the car. Advice tendered to persons who are giving no evidence of needing advice with respect to the ordinary actions of life is very likely to be disregarded or resented, or both. The duties of a street car conductor carrying passengers in a large city are too well known by all to need comment. Manifestly these duties cannot be safely or efficiently performed if the conductor undertakes to act unsolicited as adviser general to passengers who appear to be entirely competent to attend to their own business in the manner of entering and leaving the car. There is not a syllable of evidence in this case tending to establish the claim that it was the duty of the conductor to warn Sebesta of the dangers arising from vehicular
 
 *34
 
 travel upon that street at that time. Sebesta’s own evidence clearly discloses beyond a reasonable doubt that he was fully aware that he was stepping into a danger zone, and his evidence also shows that he stepped into the zone of danger entirely heedless of his own safety. The familiar principle that any one stepping into a danger zone, with knowledge of the danger, must give heed to his surroundings and look for the approach of dangerous objects at a time when the looking will be effective, could not possibly be better illustrated than as in this case. This is not a case where different persons might draw different inferences from admitted or proven facts. This court does not pass on the weight of the evidence, but the positive admissions made in this case by Sebesta on the witness stand, and fully corroborated by the witness called for cross-examination, as well, cannot be disregarded. When Sebesta rested his case, it was the duty of the trial court to direct a verdict in favor of the railway company.
 

 ' Our attention is called to the case of
 
 Mahoning & Shenango Railway & Light Co.
 
 v.
 
 Leedy,
 
 104 Ohio St., 487, 136 N. E., 198, as controlling here. It is very easy to distinguish that case from the present case.
 

 Judgment of the Court of Appeals reversed and that of the court of common pleas affirmed.
 

 Marshall, C. J., Jones and Day, JJ., concur.