FARRAR, APPELLEE, *v.* KOONTZ, APPELLANT.

(Decided March 28, 1938.)

Messrs. *Young & Young,* for appellee.
Mr. *G. Ray Craig,* for appellant.

OVERMYER, J.   At about 9:30 a. m. Sunday, January 3, 1937, a bright, clear day, the appellee, Charles Farrar, a resident of Bellevue, Ohio, was a passenger on an interurban street car going easterly to Norwalk, Ohio, his destination being the home of his son who resided on the east side of N. West street in the latter city.   When the street car, traveling on Main street, reached West street, an intersecting street in the westerly limits of Norwalk, it crossed West street and stopped to permit Farrar, the only passenger getting off at that stop, to alight.

Some twenty or thirty feet east of West street, on Main street, is the beginning point of a by-pass switch in Main street which extends altogether about one hundred and fifty feet to where it converges again to a single track, and when the street car, which is nearly

sixty feet long, had stopped, the front end of it had already entered the southerly rails of the switch, thus turning the car at a slight angle in the street. The conductor watched Farrar alight safely onto the pavement, then gave the motorman the signal bell and the car started forward. Farrar, after alighting, turned to his right and walked around the rear end of the street car to go north on the east side of West street to the home of his son, and as he stepped out behind the street car to cross to the north curb of Main street, he came into collision with an automobile being operated westerly on the north side of Main street by the appellant, E. E. Koontz, who was accompanied by his wife, son and daughter. There was no other traffic at that place on either street at the time, and there was no traffic officer, signal light or other regulation of traffic at the intersection.

Farrar suffered injuries as a result of the collision and brought an action against Koontz therefor in Common Pleas Court, resulting in a verdict for a substantial amount, upon which judgment was entered. Koontz prosecutes this appeal to reverse the same and assigns a number of errors, principally that the court should have directed a verdict for him, error in the admission of evidence and in the charge, excessive verdict and that the verdict is against the weight of the evidence.

The defendant Koontz was charged with a violation of Sections 12603 and 12603-1, General Code; failing to keep to the right side of the street in violation of a pleaded ordinance; failing to give signals or keep a lookout or keep his automobile under control and thus avoid striking plaintiff. All this was denied in the answer. Koontz, his wife, grown daughter, and son testify that he was driving about twenty to thirty miles per hour as he was passing the street car and just before the collision, and that he was driving near

the northerly curb of Main street within two or three feet of it. He stated that the street car was in motion and entering the switch as he passed along the side of it. He says:

"I could see a man coming out, stepping out from behind the street car, and of course, without a chance in the world, I quickly turned the wheel * * * to keep the car from hitting him. I felt an impact and I stopped the car quickly as possible, and I run back," etc.

The Koontz automobile traveled some fifty feet or more from the point of collision, leaving its marks on the pavement from the application of brakes, and stopped at the curb and Koontz ran back to Farrar. Farrar was lying in the street but was trying to get up, and Koontz placed him in the Koontz automobile and took him to a hospital. The evidence seems clear that Farrar came into collision with the left side of the automobile, and no part of the front of it; and Koontz says "I swerved to avoid hitting him with the front fender" and that when he first saw Farrar he was "maybe a foot or so in front of the fender."

Mrs. Koontz, who was riding in the rear seat, testified that she did not see the man at all before the collision and the first she noticed anything unusual was the sudden swerve to the right by the driver. The daughter, riding in the front seat with her father and at his right, testified that she saw the man's hat or cap on the left side of the car at the moment of collision, and the son testified that he saw the man step from behind the street car and that his father "twisted the wheel" and "the man stepped into the left side of the car at the front door."

This, in brief, is all the pertinent testimony as to the operation of the automobile, except that of a newsboy on the corner waiting to cross the street, who testified that Farrar "was just going around back of the

street car and out of the track a little ways'' when he was hit, and he says the front fender hit Farrar ''but his head must have caught back further.'' From the evidence it is apparent that, considering the width of the street, the presence of the large interurban car and the direction it was moving, outside of a foot or two difference, the automobile could not well have been operated other than where it was. However, even though Koontz were to be found negligent in some respect, the plaintiff's conduct must be inquired into. Farrar himself gave the following account: He stated that he got off the street car and walked around the back end of it to go north toward North West street. Then appear the following questions and answers:

''Q. After you started around back of the street car, did you get where you could look up the other side of the street car? A. Yes, just about one foot north.

''Q. Did you pass the street car? A. Just about a foot.

''Q. What happened then? A. That automobile came in and knocked me off, is all I know.

''Q. At the time of the collision, how close to the street car were you? A. Not very far away, just a foot or two, just room enough, you know, to go by.''

He then states the first he was conscious of anything thereafter was when Koontz placed him in his automobile. On cross-examination, Farrar testified as follows:

''Q. And you started across the street? A. Yes.

''Q. And you do not know how far you had gone when something happened? A. No.

''Q. And you do not know what happened just at the time, do you? A. No, it was just like that (witness claps hands).

''Q. You did not see the automobile at all, did you,

until the accident happened? A. No, just when they put me in the machine.

"Q. That was the first you saw the automobile, when they put you in the machine? A. Yes. * * *

"A. I get off the street car and I look and I don't see nothing and then I get hit. * * *

"Q. And when you started across the street you were looking right across the street? A. Yes. * * *

"Q. You did not see anything until the accident occurred? A. That is all. At the time I see myself and I see the car and all at once I got hit.

"Q. But you did not see any automobile? A. No, sir. I did not see the automobile."

We think the foregoing very pertinent parts of plaintiff's testimony must be and are decisive of the case, and require little comment. In one answer he says "I look and I don't see nothing," but he does not say where he looked or in what direction he looked, or whether he did his looking at a time and place and direction where his looking would have been effective, and it is obvious that if he had looked he must have seen the automobile. In another answer he says he was looking straight ahead in the direction of North West street, whither he was bound. He is very positive finally that he did not see the automobile until after the accident and when he was being placed in it.

"The familiar principle that any one stepping into a danger zone, with knowledge of the danger, must give heed to his surroundings and look for the approach of dangerous objects at a time when the looking will be effective, could not possibly be better illustrated than as in this case." *Cleveland Rd. Co.* v. *Sebesta,* 121 Ohio St., 26, 166 N. E., 898. The syllabus in that case reads as follows:

"It is the duty of a passenger upon a street car, when alighting from the car upon a public street or highway, to exercise ordinary care for his own safety

against danger arising from the use of the street at that time and place by vehicular travel; and when the stop of the street car is at a point where vehicular travel is not held in abeyance by a traffic officer, signal light or other regulations, while the street car is standing at such stop, the ordinary care required on the part of the passenger leaving the car at such point includes the duty of the passenger to look in the direction from which vehicular travel may reasonably be expected to approach, and such looking should be done at a time when it will be effective to serve the purpose designed by it; and a failure to so look constitutes such negligence as will bar a right of recovery * * *."

It will not do to say that one looked and did not see, when the circumstances are such that had he looked he must have seen the danger at hand. *D. T. & I. Rd. Co.* v. *Rohrs,* 114 Ohio St., 493, 151 N. E., 714. In the case just cited, the testimony of the plaintiff, who was hit by a train, was almost exactly the same as in the instant case, *e. g.*:

"Q. At the time your front wheels struck the crossing, what occurred? A. The train hit me just as I seen it; just took me just that quick; she come into us.

"Q. How far was the car from your automobile at the time you first noticed it? A. She was right on to us; just as quick as I seen it she hit us; we was gone down the line."

In *Doyle* v. *Boston El. Ry. Co.,* 248 Mass., 89, 142 N. E., 693, it was held that one stepping from behind a standing street car without either looking or listening is guilty of contributory negligence as a matter of law.

In *Gibb* v. *Hardwick,* 241 Mass, 546, 135 N. E., 868, the court held that where a person stepped from behind a street car and was struck by an automobile being driven upon the adjoining track because of snow on both sides of the track, the evidence showed

that his failure to see the automobile in time to avoid being struck was due to his own carelessness.

"Where it appears that, at the close of the plaintiff's testimony or at the close of the entire evidence, there is no reasonable presumption other than that plaintiff's negligence proximately contributed to his injury, it becomes the duty of the court to sustain motions in defendant's favor for a directed verdict, unless the defendant's conduct amounts to wantonness or wilfulness." *Michalec, Admr.,* v. *Hutchison,* 123 Ohio St., 494, 176 N. E., 79.

We have accounted for all the witnesses who saw the accident and we are clearly of the opinion that the plaintiff's own evidence bars his recovery as a matter of law and that the court erred in not directing a verdict for the defendant. The judgment will be reversed and final judgment directed for the appellant. The other claimed errors become immaterial.

*Judgment reversed and final judgment for appellant.*

LLOYD and CARPENTER, JJ., concur.