STURGELL, ADMX., APPELLEE, *v.* DETROIT, TOLEDO & IRONTON RAILROAD CO., APPELLANT.

(No. 205—Decided August 28, 1958.)

*Mr. James M. Drennen,* for appellee.
*Mr. Thos. H. Monger* and *Mr. Wray Bevens,* for appellant.

RADCLIFF, J. This is an action to recover for wrongful death, brought by the plaintiff, appellee herein, against defend-

ant, appellant herein, pursuant to Chapter 2125 of the Revised Code. The plaintiff filed a petition in the Common Pleas Court of Pike County, Ohio, alleging that her husband, the decedent, was killed as the result of a collision between a train of the defendant and a car driven by the decedent on July 8, 1955. The plaintiff charged that the defendant corporation failed to sound a whistle or a bell and failed to maintain the grade crossing free from weeds and undergrowth, so that the travelers crossing the right-of-way would have an unobstructed view, in violation of the statutes of this state. The defendant corporation filed two defenses in their answer, first, a general denial and, second, contributory negligence on the part of the plaintiff's decedent.

We will briefly review the facts. A township road crosses the right-of-way and tracks of the defendant corporation in the northwestern portion of Pike County, at a right angle. The crossing is known as Beatty Road Crossing. At about 7 o'clock a. m. on July 8, 1955, the decedent, Dewey Bascom Sturgell, was driving in a westerly direction on Beatty Road approaching the grade crossing. The decedent was driving a 1948 or 1949 Chevrolet. Accompanying him was his stepdaughter, Helen Clifford, who at that time was 15 years of age. The decedent was taking Miss Clifford to her work in Waverly. The decedent had crossed the tracks and right-of-way at this particular point on many previous occasions. Beatty Road runs generally east and west, and the tracks of the defendant corporation run generally north and south. The decedent was proceeding from west to east towards Waverly, and the train of the defendant corporation was proceeding from north to south. The speed of the freight train was established as being between 20 and 30 miles per hour, but that element is not a factor in the disposition of the case. The passenger in the car driven by the decedent was the only living eye witness to the accident. Miss Clifford (since married, now Helen Clifford Wildermuth) testified that the decedent drove very slowly after being within 50 to 75 yards of the crossing and in that period stopped completely on two different occasions. The last 10 or 15 feet they drove was at a speed of less than 5 miles per hour. She testified further that both the decedent and she were attempting to look and listen for any approaching train, and that there was no whistle sounded and no

bell rung and because of the weeds on the right-of-way of defendant corporation they were unable to see. Miss Clifford testified that she was leaning forward with her face pressed against the windshield attempting to look to the left or north when she thought she heard the sound of the clack of wheels, that she immediately called this to the attention of the driver who stopped his car as soon as she mentioned the sound, that at that time she saw the train within a few feet of the car, that decedent said, "we are into the crossing, you must jump," and that both the passenger and the driver were partially out of the car at the time the locomotive struck the left front portion of the car driven by the decedent. The decedent apparently was thrown by the impact against the side of the train and suffered injuries from which he died prior to his arrival at the hospital. Trial was had on the issues as hereinbefore set forth, and a verdict in favor of the plaintiff in the sum of $20,000 was returned.

From this judgment the defendant has appealed to this court on questions of law and sets forth five assignments of error as follows:

1. The court erred in permitting evidence to remain for consideration of the jury, that the defendant's train crossed the crossing involved on many other times without blowing a whistle, over the objection of defendant's counsel.

2. The damages awarded to the plaintiff by the verdict, to wit, the sum of $20,000 and the judgment therefor, are excessive and appear to have been given under the influence of passion and prejudice on the part of the jury.

3. The court erred in overruling appellant's motion for new trial.

4. The court erred in overruling appellant's motion to direct the jury to return a verdict in favor of appellant, which motion was made at the conclusion of the appellee's testimony.

5. The court erred in overruling appellant's motion to direct the jury to return a verdict in favor of the appellant, which motion was made at the conclusion of all of the testimony.

Disposition of the assigned errors will be made as they appear and are argued in appellant's brief. The first assignment of error is directed to the admission of evidence and specifically to the following question and answer:

"Q. You don't want to tell the court and jury that the train did not blow its horn at the whistle post, do you? A. I will tell them that I didn't hear any whistle that morning, and before the accident happened that train passed there as many times without blowing a whistle as it did blow a whistle.

"Mr. Bevens: I move the answer be stricken.

"The Court: Overruled. Exceptions of the defendant were noted."

It seems to us that the error urged thereby falls directly within the doctrine set forth in the case of *State* v. *Lasecki,* 90 Ohio St., 10, 106 N. E., 660, L. R. A. 1915E, 202. This rule has been followed down through the years in a great many cases, a few of which are, *Patterson* v. *State,* 96 Ohio St., 90, 104, 117 N. E., 169, L. R. A. 1918A, 583; *Timberman* v. *State,* 107 Ohio St., 261, 140 N. E., 753; *Breinig* v. *State,* 124 Ohio St., 39, 176 N. E., 674; *Carson* v. *Metropolitan Ins. Co.,* 156 Ohio St., 104, 100 N. E. (2d), 197, 28 A. L. R. (2d), 344; *Vencill* v. *Cornwell,* 103 Ohio App., 217, 145 N. E. (2d), 136; and in 21 Ohio Jurisprudence (2d), 199, Evidence, Section 187. The rule is stated in paragraph one of the syllabus of *State* v. *Lasecki, supra,* as follows:

"Where the question put to a witness is competent, or not objected to by counsel, and the witness answers, a part of which answer is competent and a part incompetent, a general objection to the whole answer is properly overruled, even though there be some objectionable matter in the answer. To save the objector's rights he should clearly indicate the part of the answer to which he objects and move its exclusion. If the court overrules such motion, he should then save his exception."

In the instant case, the question was asked on cross-examination by counsel for the defendant of a witness offered by the plaintiff. The two previous questions put to the witness had to do with the schedule and the time the train in question usually crossed over the township road at Beatty Road Crossing. In addition to the rule in the *Lasecki case, supra,* the question was one of a series of questions propounded by counsel for the defendant to test the knowledge that the witness had of prior incidents at the same crossing.

In view of the authorities cited, the order in which the questions were propounded, and the answer given, we believe that

the admission of this evidence is not error, and that the first assigned error is not well taken.

The second assignment of error raises the question of excessive damages. There is no need to go into great detail on this phase of the case. There was testimony offered to show that the deceased was 27 years of age and apparently in good health at the time of his death; that he was employed at the time, earning $48.50 per week; that he had earned more in the two years prior to his death; that he was married to the plaintiff; and that they were living together. The following authorities have been examined: 16 American Jurisprudence, 118 *et seq.*, Death, Section 177; 4 Ohio Jurisprudence (2d), 505, Appellate Review, Section 1156; 16 Ohio Jurisprudence (2d), 337, Damages, Section 199; 16 Ohio Jurisprudence (2d), 509, Death, Section 157; 16 Ohio Jurisprudence (2d), 545, Death, Section 203; *Paragon Refining Co.* v. *Higbea, Admr.,* 22 Ohio App., 440; *Spence* v. *Commercial Motor Freight, Inc., of Indiana,* 99 Ohio App., 143, 127 N. E. (2d), 427, 53 A. L. R. (2d), 1445; and the excellent annotation in 53 A. L. R. (2d) discussing the *Spence case.*

In view of the evidence in the record and the authorities above cited, the amount of the verdict does not appear to be excessive nor does it appear to have been the result of passion or prejudice on the part of the jury, and, therefore, the second assigned error is not well taken.

Assignment of error No. 3 is that the court erred in not granting the defendant's motion for a new trial and is based solely upon the two preceding assigned errors which we have heretofore disposed of, so it is not necessary to do more than say that the third assignment of error is not well taken.

Assignment of error No. 4 goes to the refusal of the trial court to direct a verdict for the defendant at the conclusion of the plaintiff's case in chief. All that need be said as to this assignment of error is that upon the authority of *Halkias* v. *Wilkoff Co.,* 141 Ohio St., 139, 47 N. E. (2d), 199; *Wilkeson, Admr.,* v. *Erskine & Son, Inc.,* 145 Ohio St., 218, 61 N. E. (2d), 201; and *Biery, Admx.,* v. *Pennsylvania Rd. Co.,* 156 Ohio St., 75, 99 N. E. (2d), 895, it is not well taken.

We now come to assignment of error No. 5, which brings

before us the crux of the entire case in bold outline. The question raised is very simple. Did the evidence introduced during the trial of this case raise a factual situation which required determination by a jury, or did it raise a legal question which the trial court should have decided? Did the conduct of the plaintiff's decedent amount to contributory negligence as a matter of law or was there a factual situation which only the jury could decide?

The defendant relies on the two well-known cases in the law of negligence in Ohio, which are quoted in every grade-crossing case. One is *Detroit, Toledo & Ironton Rd. Co.* v. *Rohrs*, 114 Ohio St., 493, 151 N. E., 714, which sets forth the doctrine that the looking must be effective to relieve a person driving across a railroad crossing from the guilt of contributing to his own injury by failing to see where there is an unobstructed view. It is pointed out in the *Rohrs case* there was, without question, an unobstructed view, while in the present case that is a factual issue which is in dispute. The other case relied upon by the defendant is *Patton, Admx.*, v. *Pennsylvania Rd. Co.*, 136 Ohio St., 159, 24 N. E. (2d), 597, which established the "uncontrovertible facts" doctrine. In the *Patton case* the train of the defendant was exceeding the speed limit and thus the railroad was guilty of negligence per se, but the driver of the vehicle involved in that collision saw the train at a point where he could have safely stopped, yet he drove directly on to the track and was killed as a result of the ensuing collision. Down through the years a great many departures from and distinctions between the *Rohrs case* and different factual situations have been drawn. Attention is called to *New York, Chicago & St. Louis Rd. Co.* v. *Van Drop*, 36 Ohio App., 530, 532, 173 N. E., 445; *Barber* v. *Cleveland Ry. Co.*, 10 Ohio Law Abs., 236, 237; *Ware* v. *Cincinnati Northern Rd. Co.*, 40 Ohio App., 39, 42, 177 N. E., 383; *Baltimore & Ohio Rd. Co.* v. *Henery, Admx.*, 235 F. (2d), 770, 773; and *New York Central Rd. Co.* v. *Delich, Admx.*, 252 F. (2d), 522, 524. It is interesting to note that in these last cited cases the opinions were written by Judge Florence Allen, now of the U. S. Circuit Court of Appeals, who was a member of the Supreme Court of Ohio at the time the decision in the *Rohrs case* was handed down, but who did not join with the majority in that

case. See the case of *Tanzi* v. *New York Central Rd. Co.*, 155 Ohio St., 149, 98 N. E. (2d), 39, 24 A. L. R. (2d), 1151, and the excellent annotation reviewing the *Tanzi case* in 24 A. L. R. (2d) at page 1151; *Biery* v. *Pennsylvania Rd. Co.*, *supra* (156 Ohio St., 75); and *Hood, a Minor*, v. *New York, Chicago & St. L. Rd. Co.*, 166 Ohio St., 529, 535, 144 N. E. (2d), 104. The very recent case of *Davis, Admx.*, v. *New York Central Rd. Co.*, 104 Ohio App., 497, 150 N. E. (2d), 477, 42 A. L. R. (2d), 338, indicates a departure and distinction from both the *Rohrs* and *Patton cases*. The *Biery case, supra*, the *Hood case, supra*, and the *Davis case, supra*, are departures or distinctions from the *Patton case*.

It is useless to review the factual situations in all these cases, but it is necessary to comment upon some of the testimony in the case before us. There were six so-called disinterested witnesses who testified in the trial in the court below. By disinterested witnesses is meant those who have no pecuniary interest in the outcome of the suit or are not employed by the defendant corporation. Four disinterested witnesses were subpoenaed by the plaintiff and two by the defendant. One disinterested witness testified as to the condition of the weeds and brush at the crossing and the ability to observe. And one need only look at defendant's exhibit 1, a photograph taken the day of the accident, and defendant's exhibit 6, a photograph taken from the same spot 20 days after the accident, to realize that the weeds were a fact to be considered in the question of whether there was an unobstructed view. The only witnesses who testified that the decedent could have had a view were employees of the defendant corporation and members of the train crew, who attempted to reconstruct the accident from physical evidence observed after the collision.

Five disinterested witnesses testified as to the sounding of the whistle and bell as required by statute in Ohio. Three disinterested witnesses testified that there was no whistle or bell sounded at anytime prior to the noise of the train going into "emergency" and the crash into the car. One disinterested witness heard the whistle for the crossing for some period of seconds before the accident. The fifth disinterested witness, being the husband of the one who heard the whistle before the

crash, said he heard two quick "toots" and then the crash, and that they were simultaneous. The train crew insisted that the train whistle was blown and that the bell was ringing from the time the locomotive passed the whistle post some 1,600 feet north of the scene of the crash. This court can come to only one conclusion, namely, that this evidence presented an issue of facts; whether or not the defendant violated its statutory duty to keep its right-of-way free from weeds and undergrowth so that travelers may have an unobstructed view of an approaching train, and to sound the whistle and bell at the crossing. The other factual situation which we feel was presented was whether the conduct of Dewey Bascom Sturgell, the decedent, as to observing and listening for the approaching train, if any, was conduct that an ordinary prudent individual would engage in under the same circumstances, or whether it was conduct which, as a matter of law, contributed in some degree to his death, or was the proximate cause of his death. In the *Rohrs case, supra* (114 Ohio St., 493), there was an unobstructed view. In our case, whether the view was unobstructed is a question of fact. In the *Patton case, supra* (136 Ohio St., 159), there were uncontrovertible facts indicating that the conduct of the driver of the vehicle was the proximate cause of his death. In the instant case the uncontrovertible facts are not present, the facts are in controversy, and this court, not being the trier of the facts, is certainly not at liberty to question that finding. This is certainly consistent with the holding of the Supreme Court in the *Tanzi case, supra* (155 Ohio St., 149). The second paragraph of the syllabus of that case reads as follows:

"Whether the testimony of a witness or of a party is false or mistaken is a question for the jury or other trier of the facts."

This rule has been followed and reaffirmed in the *Hood case, supra* (166 Ohio St., 529).

We do not feel that the law imposes an absolute duty upon the travelling public to see that which cannot be seen, or to hear a sound that has not been actuated. Whether one could see is a question of fact. Whether there was a sound to hear is a question of fact. These issues of fact have been decided in the proper forum, the jury, and we have not the authority or right to meddle.

After a thorough reading of the record, a careful scrutiny of the testimony, and a detailed examination of the trial court's charge on the various issues, we feel that the issues raised in this case were issues of fact and not questions of law and were properly submitted to the jury. The special instructions requested by both parties were given before argument. The special interrogatories requested by the defendant were submitted to the jury with proper instructions. The first interrogatory asked:

"Was the horn of defendant's engine sounded at a distance of at least 80 and not further than one hundred rods north of the Beatty Road Crossing just before the collision on July 8, 1955?"

This interrogatory the jury answered in the negative, signed by all 12 jurors. The second interrogatory, which had to do with the ringing of the bell, was not answered because it required an answer only in the event the answer to Interrogatory No. 1 was "yes." The answer to the interrogatory was certainly consistent with the verdict.

After a careful consideration of the entire record we feel that there was no prejudicial error affecting the substantial rights of the defendant and conclude that the judgment herein appealed from should be, and hereby is, affirmed.

*Judgment affirmed.*

COLLIER, P. J., and GILLEN, J., concur.