Matthias, J.
Defendant assigns as one error the overruling by the Common Pleas Court of its motion for a directed verdict, made at the end of the trial. The motion is based upon two contentions, the second of which is “that the plaintiff was guilty of negligence which proximately contributed to cause the collision and his own injuries so as to prevent his recovery against defendant as a matter of law. ’ ’
Defendant assigns other alleged errors for our consideration, but, in view of the conclusion we reach with respect to the alleged error mentioned above, it is unnecessary to consider the others.
That assigned error raises the determinative issue of whether the evidence shows the plaintiff to have been guilty of contributory negligence as' a matter of law. However, in view of *553 the wealth of law previously enunciated hy this court on the subject of contributory negligence with respect to people who drive their motor vehicles onto railroad tracks in the paths of oncoming trains, the actual issue herein is whether there is anything novel in the factual situation presented by the instant case which would distinguish it from the long line of cases which seem to control.
In view of the fact that Judge Hart, in writing the opinion in Patton, Admx., v. Pennsylvania Rd. Co., 136 Ohio St., 159, 24 N. E. (2d), 597, did such a thorough job of compiling and summarizing the line of cases referred to, it is unnecessary for this court to do more than refer to pertinent parts of some of them.
In the Patton case, the driver was held to have been guilty of contributory negligence even though it was stated that the train was traveling faster than allowed by a city ordinance. The third paragraph of the syllabus of that case is as follows:
“The driver of a truck, about to pass over a railroad grade crossing on a public street, must exercise his senses of sight and hearing to discover whether trains are also about to pass over such crossing, and such observation must be made at such time and place as to be effective for that purpose. (Detroit, Toledo & Ironton Rd. Co. v. Rohrs, 114 Ohio St., 493, approved and followed.)’’ (Emphasis added.)
In the case of Toledo Terminal Rd. Co. v. Hughes, 115 Ohio St., 562, 567, 154 N. E., 916, Judge Day stated the question involved, as follows:
“This state of the record requires the solution of the proposition involved in the following question: Does the admission by the plaintiff that he knew of the location of a certain railroad crossing and of the existence of a heavy fog in the air which made it impossible to see more than a few feet ahead, together with the admission that he drove his automobile at night into the side of a freight train, constitute such negligence as would bar his recovery in an action against the railroad company for negligence in allowing its train to block such crossing without warnings by bell or light?”
After a discussion of such proposition, it was held that such driver was guilty of contributory negligence and could not recover as a matter of law from the railroad company.
*554 In the case of Detroit, Toledo & Ironton Rd. Co. v. Rohrs, 114 Ohio St., 493, 151 N. E., 714, the following colloquy establishes the facts upon which the decision of the court rested: “The driver of the automobile, although saying that he had kept up a continual observation to the north and to the south as he drove toward the crossing, stated that he did not see the locomotive until it was just ready to strike the machine. He was asked and answered these questions:
“ ‘Q. At the time you were 15 or 20 feet from the track, what did you do? A. Looked, watched both ways.
“ ‘Q. Did you do anything else? A. Yes, sir.
“ ‘Q. What did you do? A. Slowed a little down, then I went on.
“ ‘Q. State whether or not you listened? A. Yes, sir.
“ ‘Q. Did you hear a locomotive bell or a whistle? A. No, sir.
“ ‘Q. Did you hear either? A. No, sir.
“ ‘Q. At the time your front wheels struck the crossing, what occurred? A. The train hit me just as I seen it; just took me just that quick; she come into us.
“ ‘Q. How far was the car from your automobile at the time you first noticed it? A. She was right on to us; just as quick as I seen it she hit us; we was gone down the line.’ ” Finding the plaintiff guilty of contributory negligence, the court indicated its reasoning as follows:
“Surely it will not do for one to claim the right to recover simply because he has looked and did not see, if the conditions are such that, had he looked, he must have seen. When he says he did look, and the conditions establish the fact that any one who looked would have seen, then, if he says he did not see, his own evidence establishes the fact that he did not look, though he may think he did. To hold otherwise would simply be a manifest absurdity, and the doctrine that the traveler in a vehicle upon the highway when coming to a railroad grade crossing must look and listen might as well be abandoned if one so placed, in broad daylight, can say that he looked in a given direction where there was a locomotive moving toward the crossing, and not farther than 75 feet away, and that he could not see it.”
*555 Keeping the quoted testimony in the Rohrs case in mind, we quote the following portions of the plaintiff’s testimony in the instant case:
“Q. You were looking to the north when you were 30 feet west of the railroad track? A. And then turned and looked to the right. [In the instant case, the train was headed south and the plaintiff east.]
“Q. Is that right? A. I was looking at 30 feet, something like 30 or 35 feet. I turned and looked to the right. I don’t know how long it takes you to look to the right, and when I looked to the right I looked to the left. I turned my head back and looked toward the crossing and some approaching cars was approaching me.
“Q. Prom the point 30 feet west of the nearest rail of that track you were approaching, as you traversed that distance, as you drove that automobile over that 30 feet of roadway, did you look to the north for a railroad train? A. I wouldn’t think I looked to the north for the 30 feet which I looked to the right and turned back and looked across and just before the train hit me I looked and seen it coming. l<* * *
“Q. Well, prior to the time you collided with the railroad train, did you ever see that railroad train. A. Yes, sir. I saw that train just before it hit me is all.
‘ ‘ Q. Where was the train with respect to your automobile ? Was it in front of it or to the left of it? Wh.ere was it? A. Just to the left. C Í # # *
“Q. And how far away was it at that time — the time you first saw the railroad train? * * * Í ( # * #
“Q. You don’t have to explain it. Just tell me the answer. * * * A. Well, that’s back about 50 or 70 feet — between 50 and 70 feet.
“Q. Between 50 and 70 feet. Did you observe the train as it moved that 50 or 70 feet south toward the roadway, or did you take your eyes from it then and try to extricate yourself from the predicament in which you found yourself? A. When I seen the train, I cut my car deep to the right as I could.
*556 “Q. Took your eyes off the train, didn’t you? A. Certain I took my eyes off the train; fell over to my right.
“Q. All right, sir. Then you saw the train 50 to — how far, how many feet? A. 50 to 60, 70 feet, something like that.
“Q. Between 50 to 70 feet. Now the train was moving southbound, wasn’t it? A. It was moving south.
“Q. Where was the front of your automobile at that moment with respect to the nearest rail of the tracks you were approaching? A. I’m thinking back — about somewhere between a car length and a half and two car lengths.
“Q. You were between a car length and a half and two car lengths west of the nearest rail, is that correct? A. Yes, sir.
“Q. Did you apply your brakes? A. To tell you the truth 1 don’t know whether I applied my brakes or not, because it excited me a-seeing it and I fell over to the right-hand side. I wouldn’t say—
“Q. You told me you saw a large yellow light. A. 1 did.
“Q. When you looked — A. That’s what I saw, just a great big yellow dome light.
“Q. By ‘dome light’ you don’t mean you saw a light in the cab of the engine, do you, in the dome of the engine? A. No, it was the front end of the train. <<• • * '
“Q. * * * Do you recall your speed, the speed of your automobile with accuracy now, Mr. Boles? You’ve estimated it as between 10 and 12 miles an hour. Could that speed have been a little less? A. Well, no, I don’t think it would have been any less.
“Q. Do you recall stating in January, 1955, that your speed was five miles an hour? A. Well, no, sir, I don’t remember ever stating that. U * # #
“Q. What was the speed of your automobile at the time it was 100 feet west of the railroad track? A. Well, I would figure it was around 20.
“Q. About 20 miles an hour? A. Yeah.
“Q. You have testified — A. (Interposing) I would figure it was around 20 or maybe a little more. It could have been. I don’t know.
*557 “Q. The mechanical condition of your car was such that the brakes would stop the automobile at that speed before it reached the railroad tracks, was it not? A. It was in good enough shape that I could have stopped.
“Q. You could have stopped? A. I could have stopped.
“Q. Was there anything between your automobile and the railroad tracks in the direction in which you made observation to the north which prevented you from seeing the railroad tracks or railroad train? A. What do you mean by that? There wasn’t nothing to keep me from seeing the train.
“Q. There was no object between you and the train or the railroad tracks, was there? A. There was no object between me and the tracks. 66 # * *
“Q. During the two months just before the accident, did you pass over this same railroad crossing as frequently as ten times a month? A. 1 crossed that crossing as much as four days a week. Sometimes I’d cross it every day.
“Q. Four times a week you would use that crossing, and some weeks you used it every day of the week? A. Every day of the week.
“Q. So you knew where the crossing was? A. I knew where the crossing was. 66* * *
“Q. * * * Well, after you looked to the north when you were 100 feet west of the rail, did you look to the north again as you proceeded eastwardly? A. After — when I was 100 feet I looked to the north on up till I got to 30 feet.
“Q. Did you look again a separate time after you passed the point 100 feet west of the rails? A. Yes, sir.
“Q. And before you reached the point 30 feet west of the nearest rail? A. Yes, I did.
“Q. Where was the front end of your car measured west of the nearest rail of the railroad track at the time you made the next observation north along the railway tracks ? A. Well, now, I couldn’t explain that to you just exactly how far it was. I tell you the reason why I couldn’t. When I’d look back at the road, I would look back at it. I looked four, five, maybe six or seven times between there, between the 100 feet — just glance my eyes just like that.
*558 “Q. Looking up to the north for a railroad train? A. That’s right.
“Q. Did your speed increase or slow from the point 100 feet west of those tracks up to those tracks while you were looking back and forth from the north to straight ahead? A. My speed — I did release my clutch and was slowing down.
“Q. You’re slowing down. Did you put your brake on? A. Not right then I didn’t.
“Q. Each time you looked to the north on all of the times you have described, was your speed such that by the application of your brakes on that morning in the condition you knew them to be that the automobile could be brought to a stop before it reached the railroad tracksf A. 1 could have.
“Q. You could have stopped it at any time, is that correctf A. (Nods affirmatively.)
“Mr. Smith. The witness is nodding his head ‘yes.’ ” (Emphasis added.)
The quoted testimony above compared with that in the Bohr case, supra, and tested by the rule of the Patton case, supra, clearly indicates without further elaboration that the plaintiff herein was guilty of contributory negligence as a matter of law, and that it was the duty of the trial court to sustain defendant’s motions for a directed verdict.
The judgment of the Court of Appeals is, therefore, reversed, and final judgment is rendered for defendant.

Judgment reversed and final judgment for defendant.

Weygandt, C. J., Zimmerman, Stewart, Taft, Beel and Herbert; JJ., concur.