EMRICH, ADMR., APPELLEE, *v.* THE NEW YORK CENTRAL SYSTEM, APPELLANT.* (TWO CASES.)

*Motion to certify the record overruled, April 20, 1960.

426

(Nos. 271 and 272—Decided November 24, 1959.)

*Messrs. Richmond & Richmond*, for appellee.
*Messrs. Jackman, Nichols & Grubbs*, for appellant.

CRAWFORD, J. Defendant, The New York Central System, appeals from a judgment of $40,000 for the wrongful death of plaintiff's decedent, Betty Emrich, which occurred on November 20, 1957, in a collision between defendant's westbound train and an automobile being driven southwardly by the decedent on South Main Street in the city of London, Ohio.

Plaintiff, Arthur Emrich, administrator of the estate of Betty Emrich, deceased, has also appealed, in the second case before us, but only as an alternative method of presenting his contentions.

The petition alleges three negligent acts or omissions: (1) That defendant's train was traveling at a speed of 40 to 50 miles per hour; (2) that no whistle or bell was sounded on the locomotive; and (3) that the flasher signals at the crossing were not in operation.

The first defense in the answer admits the existence of defendant's tracks over South Main Street and the flasher signals erected there, but denies all other allegations of the petition. A second defense charges the decedent with driving upon a crossing without looking or listening and with failing to heed warning signals at the crossing and on the locomotive.

The reply is a general denial.

There are four assignments of error. The first pertains to (a) The refusal of the court to strike from the petition references to lights and bells at locations other than the New York Central crossing at South Main Street, (b) the overruling of defendant's objection to testimony in support thereof and (c) the court's removing these items from the jury at the close of the trial, when, it is claimed, the withdrawal was too late to be effective.

The second assignment concerns the overruling of defendant's motions, timely made, for a directed verdict, and its motion for judgment *non obstante veredicto*.

The third is directed to the overruling of defendant's motion for a new trial.

The fourth assignment complains of the refusal of the court to strike an interrogatory on defendant's motion.

No effective ordinance regulating speed was introduced. Whether the speed of the train constituted negligence, therefore, must be determined by common-law rules. The evidence indicated that as the train approached London it was traveling 75 miles per hour, and that when it crossed South Main Street it was going approximately 47 miles per hour. Decedent's speed was variously estimated at from 10 to 30 miles per hour. The evidence was in conflict as to whether the locomotive bell and whistle were being sounded, and as to whether the crossing flasher signal was operating. There was sufficient evidence to sustain a finding of defendant's negligence proximately causing the collision.

Much of the argument made before us is concentrated upon the issue of decedent's contributory negligence. Further facts must be noted in this connection.

Walnut Street, South Main Street and Oak Street in the city of London are all parallel and are located at intervals of

approximately 350 to 400 feet from each other. They run generally northwest and southeast. Walnut Street is farthest to the northeast, Oak Street is farthest to the southwest.

The tracks of the Pennsylvania Railroad run generally northeast and southwest, intersecting the three streets named at approximately right angles. The tracks of the defendant, running just slightly to the northwest and southeast, also intersect the same streets, and cross the Pennsylvania tracks immediately east of Walnut Street. All the crossings are at grade. Where the tracks of the two railroads cross South Main Street defendant's tracks are north of the Pennsylvania tracks a distance variously estimated at 240 to 300 feet.

The crossing of defendant's tracks over South Main Street forms an acute angle to the northwest and an obtuse angle to the northeast. Both these angles are occupied by business buildings up to within a short distance of the tracks.

Defendant produced evidence that its tracks were visible for considerable distances to the east from various points north of its tracks on South Main Street. Plaintiff claims that these visible distances were reduced for decedent because of her position back of the wheel of the automobile.

Plaintiff's witness, Gorman Clark, London police chief, testified:

"There are buildings on the right and buildings on the left, traveling south. You have to pull pretty well onto the track to see to the right, and the view is not too good to the left."

The visibility of decedent's automobile from the train must have borne some relationship to visibility in the opposite direction. And defendant's engineer, John Hammond, testified that although he kept a steady lookout ahead from the right-hand side of the cab of defendant's Diesel locomotive, which was pulling the train in question, he did not see decedent's automobile until immediately before the collision.

Just east of Walnut Street and north of the intersection of the two railroads there is a signal tower, maintained and operated by both railroads. The operator stationed there is employed by both. Among other duties he manually operates switches which control all blinker and bell signals of both railroads within the city of London.

At each of the four railroad crossings on South Main and Oak Streets there is a standard carrying a bell and blinker signals, also a reflector sign, reading "Stop on red signal," and a cross-buck sign, with the words, "Railroad crossing." These standards for the crossings of the two railroads on South Main Street are located in the middle of the street and near the respective crossings.

The operator of the signal tower, Charles Vickroy, said that as defendant's train approached from the east on the day in question he threw certain switches operating various blinker signals. He testified:

"A. I got up, turned the flashers on, and went to the door.

"Q. And how did you turn the flashers on? A. By turning the four west switches to the west.

"Q. By turning all four to the west? A. Yes, sir.

"Q. And those four were for what? A. The New York Central.

"Q. Did they go all the way over? A. All but one.

"Q. Which one did not go over? A. Main Street was in the center.

"Q. It was partially over. Then what did you do after you turned the flashers on? A. I went over to the door."

It is not entirely clear to us whether he claims to have operated effectively the particular switch controlling the signal at the New York Central crossing over South Main Street.

Lack of another witness in the tower cannot deprive plaintiff of a reasonable opportunity to meet and challenge Vickroy's testimony. Plaintiff's evidence of the signals which were actually operating, and those which were not, is his only means of doing so, and he should be permitted to present it.

Several witnesses testified that the flasher signals for defendant's crossing on Main Street were not operating at the time of the collision, but that those for the crossing on the Pennsylvania Railroad at South Main street were. There is also testimony that the signals for the crossing of the Pennsylvania Railroad at Oak Street were operating, but that those for defendant's crossing on that street were not.

It is our view that this evidence was pertinent and admissible and should have gone to the jury. Even if we were to ac-

cept defendant's evidence that the bell and whistle on its locomotive were sounding, or if the decedent detected an approaching train in any manner, the operation of the signals at the Pennsylvania crossing, and the darkness and silence of those at defendant's crossing, must have created a very confusing situation. This circumstance could have a very important bearing on the question of decedent's contributory negligence, as well as upon defendant's negligence.

With respect to the latter, defendant claims that the existence and operation of its signals was voluntary and not required by law, and cites the recent case of *Easterwood* v. *New York, Chicago & St. Louis Rd. Co.*, 108 Ohio App., 425, 162 N. E. (2d), 487. The validity of such contention is not denied. But that principle does not reach the present situation, where signals not required by law were nevertheless in existence, and there is credible evidence that they were being negligently operated so as to create a dangerous and confusing situation.

The first assignment of error appears to us not well taken.

The second and third assignments pertain to the overruling of defendant's motions for directed verdict, for judgment *non obstante veredicto* and for a new trial. The issue of contributory negligence is vigorously asserted in support.

We are cognizant of the cases cited to the effect that failure of the signals does not relieve a traveler from exercising such care as an ordinarily prudent man would employ under similar circumstances. *Toledo Terminal Rd. Co.* v. *Hughes*, 115 Ohio St., 562, 154 N. E., 916; *Columbus, Delaware & Marion Electric Co.* v. *O'Day, Admx.*, 123 Ohio St., 638, 176 N. E., 569; and *Lohrey* v. *Baltimore & Ohio Rd. Co.*, 131 Ohio St., 386, 3 N. E. (2d), 54. These cases do recognize, however, that the failure of the warning signals may have some bearing upon the question whether the injured party is exercising ordinary care. Where, as here, there was not only failure of the signals at the particular crossing, but also the distracting operation of others at a nearby crossing, the case is one for the consideration of a jury.

The principle of negligence per se enunciated in the case of *Patton, Admx.*, v. *Pennsylvania Rd. Co.*, 136 Ohio St., 159, 24 N. E. (2d), 597, is not applicable to the facts before us. The present case is likewise distinguishable on its facts from *De-*

*troit, Toledo & Ironton Rd. Co. v. Rohrs,* 114 Ohio St., 493, 151 N. E., 714; *Pennsylvania Rd. Co. v. Rusynik,* 117 Ohio St., 530, 159 N. E., 826, 56 A. L. R., 538; *Boles v. Baltimore & Ohio Rd. Co.,* 168 Ohio St., 551, 156 N. E. (2d), 735; and *Inks v. Jones & Laughlin Steel Corp.,* 81 Ohio Law Abs., 475, 160 N. E. (2d), 146, cited by defendant-appellant.

It is further contended that 'a new trial should have been granted because the amount of the verdict was excessive.

The evidence indicated that decedent was a hard-working farm housewife, 36 years of age, with a husband and two young daughters, on behalf of all of whom this action is brought. Appellee's brief suggests in justification of the verdict a formula based upon an average life expectancy for decedent of 30.5 years and the average hours she worked at a rate of 33-1/3c per hour. Appellant counters with the argument that the service for the daughters would have been required for only a comparatively few years.

It must be recognized that there has been a general upward trend in the amount of verdicts. And while the amount found here cannot be analyzed with mathematical precision, we must always allow for a reasonable difference of viewpoint and evaluation. While this verdict is large, we cannot say that it is excessive so as to justify substituting our opinion for that of the jury.

We find the second and third assignments of error not well taken.

The fourth and last assignment is directed to the overruling of defendant's motion to strike an interrogatory submitted by plaintiff. The interrogatory and answer were as follows:

"Special Interrogatory. Do you find that the decedent, Betty Emrich, was guilty of negligence that directly and proximately contributed to her death? Please answer 'Yes' or 'No.'

"Answer: No." (Signed by all 12 members of the jury.)

It is contended that even under the present and applicable form of Section 2315.16, Revised Code, governing special findings, the jury should have been required to answer with greater particularity.

But whether or not this form of interrogatory was properly submitted and received, the answer is in harmony with the gen-

eral verdict, and the question and answer may therefore be ignored. But, whatever the form of special interrogatory required by the statute at the time, a general verdict may not be set aside because of special findings unless such findings are irreconcilable in a legal sense with the general verdict. See *Davis* v. *Turner*, 69 Ohio St., 101, 68 N. E., 819.

No prejudicial error appearing in the record, the judgment is affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and KERNS, J., concur.