LOOS, APPELLEE, *v.* THE WHEELING & LAKE ERIE RY. CO. ET AL., APPELLANTS.

528

(Decided December 5, 1938.)

*Messrs. Brady & Gallagher,* for appellee.
*Messrs. Smith, Beckwith, Ohlinger & Froehlich,* for appellants.

OVERMYER, J.   This appeal on questions of law is prosecuted by The Wheeling & Lake Erie Railway Company and The Baltimore & Ohio Railroad Company to reverse a judgment recovered against them in Common Pleas Court by appellee, Herman W. Loos, for injuries sustained in a collision on September 6, 1932, between an automobile operated by appellee and a locomotive at the point where The Wheeling & Lake Erie Railway crosses Navarre avenue in Toledo, Ohio. The locomotive, the property of The Baltimore & Ohio Railroad Company, at the time was operating some freight cars on the track of The Wheeling & Lake Erie Railway Company under a traffic agreement existing between the companies.

A verdict of $25,000 was returned by the jury which was later reduced by remittitur to $17,500.

The claims of negligence charged against the railroads by the amended petition are the maintenance of said crossing in an unguarded manner without any signals, guards, gates, watchmen, etc.; failure to ring a bell or sound a whistle or give other warning; failure to have a headlight or other lights burning; failure to have a cross-arm sign at the proper location; failure to keep the right of way to the north free of obstructions; failure to keep a lookout for traffic in Navarre avenue; running such train at a speed of 20 miles per hour in violation of an ordinance of the city; and failing to keep the locomotive under control.

At the conclusion of the trial and before argument the court instructed the jury that there was no evidence of unreasonable speed of the locomotive, and also instructed the jury that an ordinance of the city of Toledo prohibited the blowing of whistles by locomotives, and that failure to sound the whistle would not be negligence.

The facts as set forth in the record before us appear substantially as follows:

On the above mentioned date, September 6, 1932, the appellee, accompanied by his son and one Courtney Kalmbach and his son, was returning from Cleveland to Toledo late at night and approached from the east the grade crossing above referred to at about 1:30 a. m. In going to Cleveland on the morning of the previous day, they had driven out Woodville street. At a point somewhat parallel with but some distance south of Navarre avenue they encountered a detour between Toledo and Elmore, which took them south of Woodville street going east. On the return trip they came toward Toledo on Woodville road to the detour, then followed the designated detour route for westbound traffic, which was north of Woodville road and which brought them into Toledo on Navarre avenue. Appellee was then driving the car, Mr. Kalmbach sat in the front seat with appellee, and the two sons occupied the rear seat.

Evidence was offered by appellee tending to show some obstructions to visibility in approaching the crossing from the east, especially at night, in the way of buildings, trees, weeds and growing corn. There is evidence that no markings appeared on the brick pavement indicating the presence of a crossing, and that the tops of the rails are flush with the pavement at the crossing. Two tracks are maintained at this crossing by The Wheeling & Lake Erie Railway Company, and the locomotive and cars in question were traveling south on the easterly track.

Both appellee and Mr. Kalmbach testified that they were unfamiliar with the detour and did not know they were on Navarre avenue and did not know of the existence or proximity of the railroad crossing as they approached it, and appellee stated he had not driven on Navarre avenue previously and that he had to follow the detour signs. Appellee and his son and Mr. Kalmbach testified further that their car windows were open and that neither heard any engine bell or whistle, nor did they see any headlight nor any light coming from a headlight. It appears that the son of Mr. Kalmbach was asleep in the rear seat at the time of collision. The other three occupants of the car stated they heard no sound of an approaching train and saw no cross-arm sign to warn them of the presence of the crossing; that the first they knew of the presence of a crossing was when they were struck by the locomotive coming from the north, as they drove onto the track at a speed of about 20 to 25 miles per hour.

It appears that a cross-arm sign was located at the crossing about 13 feet east of the east rail of the track and three feet north of the pavement and that beginning at a distance of about 180 feet east of the crossing and up to it the pavement had been widened out from 20 feet to 36 feet, thus placing the cross-arm sign considerably north of where it would be located if the pavement maintained the same width up to the crossing. Whether the location and character of the sign complied with the statute was not to be decided as a matter of law. *Baltimore & O. Rd. Co. v. Reeves,* 10 F. (2d), 329.

The testimony of three occupants of the automobile was corroborated by three other witnesses, one of whom stated she was on her way home in her car, coming from Toledo, on Navarre avenue, and upon coming to the crossing, with which she was familiar, she stopped, looked both ways, and upon seeing no train approaching, hearing no bell, whistle or other signal,

proceeded to cross. While so doing, she heard some puffs of a locomotive, saw some glimmer of light from coals dropping onto the track, and speeded up and crossed. At that moment an automobile coming from the opposite direction, containing four men, passed her and drove upon the track and was struck. It developed that these men were the appellee and his companions.

Two other witnesses who were driving toward Toledo about 150 feet back of appellee's automobile testified that they saw the collision and both stated they heard no bell or whistle before the collision and that there was no headlight showing on the locomotive. These witnesses also testified that they were familiar with the crossing and were on the lookout for it.

After the collision the automobile, which had become fastened to the locomotive, was pushed southerly along the track a distance of about 130 feet where it lodged in a switch point and had to be pulled loose later by the locomotive. The evidence shows a definite downgrade of the railroad tracks southerly for some distance before reaching and after crossing Navarre avenue.

The evidence offered by the defense through its train crew, and other witnesses living in the vicinity of the crossing, was that the locomotive bell was rung on the occasion in question, that the whistle was blown, and that a headlight was burning. Evidence was also submitted by the defense disputing the presence of any obstruction to visibility, and measurements by competent civil engineers were introduced touching disputed points in the case.

The evidence of the respective parties was in direct conflict on most of the issues presented in the case, and this necessarily disposes of appellants' chief claim of error, viz., failure of the court to direct a verdict for appellants on their motions, duly made. These motions, if sustained, would have required the court to

say as a matter of law that appellee knew he was approaching a railroad crossing at the time in question, or that if he did not know it he alone was to blame. Upon the record before it, the court could not say that. Nor do we think there was error in not granting a new trial on the ground that the verdict was not sustained by the evidence or was against the weight of the evidence.

In addition to the foregoing assignments of error, there are a large number of assignments of error of trial, relating to refusal of the court to strike certain allegations from the amended petition; error in the reception of evidence; error in refusing to give certain special charges to the jury; and error in the charge as given. We have examined all of these claims in the light of the record, but it would be quite impractical to discuss all of them in detail within the limitations of this memorandum.

The allegations asked to be stricken from the amended petition related to trees, shrubbery, crops and other obstructions to visibility, located off the railroad right of way; the widening out of the pavement east of the crossing; location of the crossing sign or cross-arm; the failure to have guards, signals, gates, etc.; and failure to keep a lookout for vehicular traffic. It is true that a railroad company has no control over weeds, shrubs, trees, etc., not on its right of way (*N. Y. C. & St. L. Ry. Co.* v. *Kistler,* 66 Ohio St., 326, 64 N. E., 130), and the presence of them of itself imposes no duty of care or caution on the railroad in running its train when approaching a grade crossing; but in this case it must be remembered that these claims were not pleaded particularly as acts of negligence in themselves or in circumstances such as were present in the *Kistler case, supra,* but were pleaded by a plaintiff traveling at night who says he did not know he was near a railroad crossing and who says he was not warned by signs or signals that he was near one,

and the foregoing allegations are a part of the circumstances he pleads as reasons why the railroad company was not exercising ordinary care in the circumstances, extraneous of any statutory duties resting upon it generally. This crossing was not in the open country but in a municipality and crossed a street heavily traveled, as shown by the evidence, and in such circumstances there may be required of a railroad company, in the exercise of ordinary care, precautions not specifically provided by statute law. *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S., 408, 427, 36 L. Ed., 485, 12 S. Ct., 679; *Railway Co.* v. *Schneider,* 45 Ohio St., 678, 17 N. E., 321; *Weaver* v. *Railway Co.,* 76 Ohio St., 164, 81 N. E., 180; *Franklin* v. *Nowak,* 53 Ohio App., 44, 4 N. E. (2d), 232.

Our views on the subjects above discussed relating to the motions to strike from the amended petition apply as well to certain of appellants' special charges before argument, thirteen in number, and set up under assignment of error number 13, which were refused.

Assignments of error 3 and 4 relate to the reception of claimed erroneous evidence touching the number and wages of employees who worked for appellee at various times, in the company owned by appellee, during the period when appellee himself was incapacitated as a result of his injuries from doing the work he had done before. The evidence objected to was an inquiry of appellee as to the "amount of compensation that was ordinarily paid to others for performing the same type of work that you performed," etc., and "the reasonable value of services rendered by others for performing the same type of work you performed," etc. The answer was "sixty to seventy-five dollars a week" and "fifty to seventy-five dollars per week," respectively. We think this inquiry was not contrary to the rule laid down in *LoSchiavo* v. *Northern Ohio Traction & Light Co.,* 106 Ohio St., 61, 138 N. E., 372. In any event, the remittitur of $7,500 ordered by the trial court would cover any excess that might have re-

sulted by reason of this evidence, if erroneous. The same may be said of an assigned error in the reception of evidence touching the value of appellee's automobile, which was badly damaged.

The complaints relating to instructions to the jury merit notice, these being number 8, 9, 11 and 12 in the assignments of error. Number 12 is based upon the court's refusal to give before argument a special charge on an ordinance of the city of Toledo requiring an automobile to come to a full stop not nearer than 10 feet or further than 25 feet before driving upon a railroad grade crossing. Such ordinance was given to the jury in the charge of the court, but the special charge requested on the subject assumed knowledge on the part of the appellee that he was about to come upon a railroad crossing, a fact which he specifically denied and which was an issue in the case. Contributory negligence was presented as an issue in the case, evidence offered thereon, and the court charged the jury on the subject. But the request to charge referred to was properly refused in the circumstances and issues here presented. The same considerations we think required the court to refuse to give special requests numbers 1 to 13, under assignment of error number 13, hereinbefore referred to, as well as to assignment of error number 8, and it may be observed further that assignments of error numbers 8 and 11 are based upon short excerpts from the general charge which, when considered with all that was said by the court on the particular subject, presents no prejudicial error.

Assignment of error number 9 is based upon the following language of the court in its charge on the measure of damages, viz.:

"Now, ladies and gentlemen, if the plaintiff is entitled to recover, then he is entitled to at least such sum up to the amount that he claims in his petition as

will fully compensate him for the injury that he has suffered, that much, no more and no less.''

It is contended by appellants that this language suggested to the jurors that plaintiff, if entitled to recover, should be given at least as much and perhaps more than the amount sued for in his petition. The best proof that this was not true is the fact that they did find the plaintiff entitled to recover but did not give him within $10,000 of what he had sued for in his petition. The language complained of, in conjunction with the remainder of the charge on that subject, speaks for itself and we see no prejudicial error in the respect complained of by appellants. Practically the same language appears in the opinion of the Supreme Court in *Railway* v. *DePascale*, 70 Ohio St., 179, 187, 71 N. E., 633, 65 L. R. A., 860.

We have examined all of the numerous assignments of error and the complete record of evidence, and we find no errors of a prejudicial character requiring a reversal of the judgment; nor do we find that the verdict, as modified, is against the manifest weight of the evidence, and the judgment will therefore be affirmed.

*Judgment affirmed.*

LLOYD and CARPENTER, JJ., concur.