DIEBLEY, A MINOR, APPELLANT, *v.* THE NEW YORK, CHICAGO & ST. LOUIS RD. CO., APPELLEE.*

(No. 594—Decided March 16, 1959.)

---

*Motion to certify the record overruled, June 10, 1959.

Mr. *Ralph D. Cole, Jr.*, for appellant.

Messrs. *Williams, Eversman & Black* and Messrs. *Betts &
Betts,* for appellee.

GUERNSEY, J.  This is an appeal on questions of law from
a judgment of the Common Pleas Court in a negligence action,
based on a verdict directed by the court after both parties had
rested their respective cases.

The evidence is without conflict that, at about 9 a. m. on
March 4, 1955, plaintiff, appellant herein, then seventeen, and
four other girls from twelve to sixteen years of age were riding
as passengers in a "convertible" automobile driven by one
Barbara Agnew, then sixteen, with plaintiff occupying the right
side of the rear seat; that they had just departed from their
school at Arcadia, Ohio, had travelled about one-fourth mile,
and were enroute to McComb, Ohio, to participate in a school
music festival; that they did not know the entire route and fol-
lowed a car driven by one John Diebley, then seventeen, in which
five other students from thirteen to fifteen years of age were
passengers; that plaintiff had frequently ridden with Barbara
Agnew; that plaintiff knew how to drive; that they were fully
familiar with the location and character of the railroad crossing;
that the automobiles were traveling west on a public highway
which intersected defendant's railroad track which ran in a
northeasterly-southwesterly direction; that defendant's eighty-
car freight train was traveling in a northeasterly direction
towards the crossing and was moving at the rate of forty-five
miles per hour as it crossed the crossing; that the first automo-
bile crossed the track without mishap; that the steam locomo-
tive collided with the left front portion of the automobile in
which plaintiff rode, causing injuries to plaintiff; that it was
very foggy and at the time of the collision visibility was limited
at the railroad crossing to a distance of two hundred feet or
less; that the first sight either plaintiff or Barbara Agnew had
of the train was its electric headlight, and not until after the
automobile had reached a point in relation to the crossing that
the collision could not be avoided; that two of the girls in the
car with plaintiff were killed and could not, therefore, testify;
that the driver and passengers in the car which preceded at a

distance of not more than three hundred feet did not see the train until after they had proceeded on or over the single-track crossing; that the track was in the center of a one-hundred-foot right of way and, from the intersection of the easterly edge of the right of way with the highway to the intersection of the easterly rail with the highway, the view from the highway in the direction from which the train was approaching was, except for the fog, substantially unobstructed for a considerable distance; and that the crossing was located a short distance outside the corporate limits of Arcadia, Ohio.

Defendant's engineer, fireman, and brakeman each testified positively that the engineer sounded a whistle signal when approaching the crossing, the engineer testifying that, as was his custom when reaching the whistle post for the crossing (located about 1,326 feet southwest thereof), he first made a partial application of the air brakes on the train to effect a slowing down of the train for the junction with a main track at Arcadia, and he then blew the whistle. The fireman and brakeman, sitting on the left side of the locomotive cab, could not see the whistle post and did not testify as to the point in relation to the whistle post at which the whistle was sounded. They all testified to the effect that the noise of the locomotive while under full throttle would prevent their hearing the ringing of the locomotive bell in the vicinity of the crossing, that the opening of a valve caused the bell to ring continuously until thereafter closed, that they heard the bell ringing while passing through Findlay, Ohio, several miles before the crossing, and that the bell was ringing and the engineer turned same off when the train stopped following the collision.

The plaintiff testified that Barbara Agnew slowed her car as it approached the crossing and rolled down her window; that as they approached the crossing plaintiff looked both to the left and the right "and then, when I looked back, we were just about ready to cross the track and as I looked up out of the front window, the very corner on the side, was this big train and it was right under this blanket of fog, and it was very faint, you could hardly see it"; that she had first listened for a train at a point where the second telephone pole east of the crossing was located, and did not hear any whistle, any bell, or the noise

of any train; that if the whistle was blown when the engine was a quarter of a mile away "I still think we would have been close enough we could have heard it"; and that she did not, in view of the impaired visibility, say anything to the driver about waiting until it was safe to cross as she "had no reason to."

Barbara Agnew testified that she completely stopped her car at the bottom of the grade of the crossing, rolled down her window, and "Margie" (who sat at the right side of the front seat) also rolled down her window; that they both looked to the left and to the right; that she did not see anything to her right or to her left; that she did not hear a thing and did not hear any bell or whistle; that she then proceeded up the grade, and, as she got to the track, Margie screamed; that the moment Margie screamed she "saw the big light right at my left" and then put her hand on the gear shift to put it in reverse; that there was nothing in the car which impeded her vision from the car; that she first listened for the train at the point where she stopped at the bottom of the grade; and that she did not listen for the engine, either when it was a thousand feet or a quarter of a mile southwest of the crossing.

Another girl, riding with plaintiff, testified that she was in the middle of the back seat; that she did not hear a whistle or any other sound of a train at any time as she approached the crossing; that she listened for a train; and that the car in which she was riding was close to the track when she first saw the train. The other girl who survived the collision did not, by reason of her injuries, have any recollection of the events of the morning in question.

The testimony of the driver and four of the passengers in the first car was to the effect that the car was slowed as it approached the crossing and that at said point and time they did not hear the whistle, bell, or any other noise from the train. They did not testify that they listened for or heard the train at any other point or time. The fifth passenger in this car was not able to testify because of illness.

In her amended petition the plaintiff specified negligence of defendant in five particulars, namely, (1) failure to signal by whistle, (2) failure to signal by bell, (3) permitting crossing to be dangerous by reason of its being abrupt and steep, (4)

permitting crossing to be dangerous by reason of being rough and bumpy, and (5) operation of the train at excessive speed. Defendant's answer, in legal effect, denied these charges of negligence and charged the contributory negligence of plaintiff.

It appears from the bill of exceptions that, in sustaining defendant's motion for a directed verdict, the trial court stated that there was no evidence that the abruptness or steepness of the crossing was the proximate cause of the collision; that there was simply no testimony that the crossing was rough and bumpy; that, under the circumstances existing, the evidence did not support the specification of negligence by reason of excessive speed; and further stated:

"Plaintiff must look and listen for approaching trains before crossing and in a manner that will make the looking and listening effective, as has been said, of course, and it would not do for one to recover such as this instance here, who looked and listened but who did not see and hear. It would be a strange situation if such became the law."

The plaintiff assigned as error (1) the directing of the verdict and (2) the overruling of plaintiff's motion for a new trial. Determination of the first of these assignments will dispose of the second.

On reviewing the evidence in its entirety we find no evidence that the crossing in question was rough and bumpy, nor that its abruptness or steepness, even were such condition considered negligence on part of defendant, was the proximate cause of the collision, and to this extent we are in agreement with the conclusions of the trial court.

As to speed, it has long been the law of Ohio that in the absence of a statute regulating speed it is not negligence for a railroad to run its trains in open country at such rate of speed as those in charge deem safe to the transportation of passengers and property unless there are facts and circumstances which, when taken in connection with a high rate of speed, would make such speed an element or factor in constituting negligence. *New York, Chicago & St. Louis Rd. Co.* v. *Kistler*, 66 Ohio St., 326, 64 N. E., 130. In the case of *Hicks, Admr.*, v. *Baltimore & Ohio Rd. Co.*, 160 Ohio St., 307, 116 N. E. (2d), 307, the Supreme Court applied this rule to a situation

where there was fog and, in the opinion, concluded at page 312:

"The fact that weather conditions were adverse does not in and of itself impose upon a railroad liability for negligence. The speed at which a train was moving may become an essential element in determining whether a railroad was negligent in the operation of its train in the open country, *where the view of the track was obscured* by fog, rain, mist, snow or storm, *and no warning signals were given.* But in the instant case, *the warning signals were given,* the headlight of the lead locomotive was on and, although the day was foggy and misty at the time of the collision, *the evidence is uncontradicted that there was visibility from one-half to two miles.*" (Emphasis added.)

A part of this conclusion was carried into paragraph three of the syllabus of the case, wherein the court held:

"3. In such case, the speed at which the locomotive was moving in open country at the time of the collision is not an essential element to determine whether the railroad was negligent in the operation of its locomotive under adverse weather conditions, *where adequate warning signals were given* and *there was nothing to obstruct the vision* and hearing *of the driver* of the automobile." (Emphasis added.)

Since, in the *Kistler case, supra,* the Supreme Court held that speed could not be charged as negligence under the facts of the case, and, in the *Hicks case, supra,* the court likewise concluded that the facts did not support such a charge, then to a degree any observations in those cases that speed could be considered in determining negligence would be obiter. However, the statements and conclusions to such effect in those cases certainly stand the test of reason, particularly in a factual situation such as is before this court.

In view of the fact that a driver, when approaching a railroad crossing, is ordinarily charged with the duty of looking when the same will be effective and, by reason thereof, also usually charged with seeing what can be seen, it would appear that if the view of the track is not obscured the sight of the train would in itself be warning of its presence, and the failure, in such case, to give warning signals would not thereby make speed a factor in determining the railroad's negligence. It follows that if warning signals were given, or, if the view of the track was

not obscured, then, *in either case,* there is no question of the railroad's negligence for the jury by reason of speed. Conversely, before a jury question as to negligence by reason of speed may exist, in circumstances such as those before us, *both of the factors* of (1) obscured view of the track and (2) failure to give warning signals must also exist.

Here, the evidence is that the view of the track was obscured by fog, reducing visibility to two hundred feet or less. As the train was traveling forty-five miles per hour it was approaching the crossing at the rate of sixty-six feet per second, and it would take only about three seconds for it to travel the two hundred feet in which it would be visible from the vicinity of the crossing. It is our opinion, under these circumstances, that if there was a question of fact for the jury as to whether warning signals were given, and the jury should determine that they were not given, then it likewise became a question for the jury whether the railroad, in operating its train at a speed of forty-five miles per hour, was exercising due care under the circumstances then existing, one circumstance then existing being that no signals warning of the presence of the train were being given and another of such circumstances being the obscured view of the railroad track.

As to the charges of negligence by failure to sound the whistle and ring the bell, the statutory requirements are specific that a whistle must be sounded not less than eighty rods (1,320 feet) and not more than one hundred rods (1,650 feet) from the crossing and that the bell must be rung continuously until the crossing is passed. Section 4955.32, Revised Code. In determining whether a railroad was guilty of negligence per se by failing to perform these statutory duties, the question for the court, and in a proper case for the jury, to determine is not whether the driver, the plaintiff passenger in the automobile, or both were actively listening at the time when the whistle should have been sounded and at the time when the bell should have been rung, but is whether the defendant did actually sound the whistle and did actually ring the bell at the proper time. To determine this question it was proper to admit for consideration any competent evidence of probative value tending to prove or disprove same. And, when a motion for a directed verdict was

made after the parties had rested their respective cases, the court had the duty to construe the evidence most strongly in the plaintiff's favor, and, when so construed, if the evidence was in such conflict that reasonable minds might differ in their conclusions based thereon, the court was required to overrule the motion for a directed verdict and to submit to the jury the question of defendant's negligence or lack of negligence with respect to signals.

The testimony of defendant's three trainmen was positive as to the sounding of the whistle, and also as to the bell ringing both several miles before the crossing and until the train was stopped beyond the crossing, from which it could be inferred that the bell was rung continuously until the crossing was passed. As hereinbefore indicated the testimony of the plaintiff, her driver, the passengers in the car with her, and the driver and the passengers in the car preceding was positive to the effect that as they respectively approached the crossing they listened and heard nothing. In this respect it should be emphasized that the occupants of the first car approached the crossing and listened at a different and earlier time than did the persons in the car with which the train collided, and that such listening may have taken place at the time when the whistle signal was required by statute to be given. It should be emphasized also that since the bell was to have been rung continuously until the train had passed the crossing all listening took place during the time when the bell was required to be rung.

Furthermore, were it concluded from the evidence that plaintiff and none of her witnesses were consciously listening for a train whistle at the time when such signal was required to be given, it nevertheless appears that at such time they were in a reasonable position to hear such whistle signal, if given, and did not hear same. Failure to consciously listen does not, for such reason alone, preclude the ability to hear. In our opinion testimony of a witness that he did not hear a whistle signal, even when not consciously listening, but when the witness was in a reasonable position to hear same, if given, is evidence of some probative value that the whistle signal was not given, whereas testimony of a witness that he did not hear a whistle signal, even when not consciously listening, but when the witness was

*not* in a reasonable position to hear same, if given, is evidence of no probative value that the signal was not given. These conclusions are supported by the first paragraph of the syllabus of the *Hicks case, supra,* wherein the Supreme Court held:

"In a wrongful death action against a railroad company arising out of a crossing collision, *testimony of witnesses that they did not hear any warning signals* of a locomotive approaching a grade crossing *has no probative value* in establishing negligence of the railroad company, *where such witnesses were not in a reasonable position to hear such warning signals* or know whether they were given." (Emphasis added.)

And such conclusions are supported by the first paragraph of the syllabus of the case of *Hood, a Minor, v. New York, Chicago & St. Louis Rd. Co.,* 166 Ohio St., 529, 144 N. E. (2d), 104, wherein the Supreme Court held:

"Where the driver of an automobile testifies that he looked and listened for a train *at a place where such driver should have been able to hear a bell and whistle* of and see a headlight on an approaching train, his negative testimony that he heard no bell or whistle and saw no headlight may be given some weight, notwithstanding positive testimony that the bell was rung, the whistle was blown and the headlight was on." (Emphasis added.)

In the case of *Huntsman, Admr., v. Chesapeake & Ohio Ry. Co.,* 82 Ohio App., 79, 81 N. E. (2d), 118 (motion to certify overruled October 15, 1947), this court held at page 84:

"3. The court did not err in refusing to withdraw from the consideration of the jury an allegation of the amended petition that the statutory whistling signal was not given, as the testimony of the other occupant of decedent's automobile, and the two occupants of the automobile which preceded decedent's automobile over the railroad crossing, the safety of each of whom depended upon their hearing the whistle, if blown, and all of whom were in easy hearing distance of the whistle, if blown, that they did not hear it, was sufficient to require the submission of this allegation to the jury notwithstanding the testimony of witnesses on behalf of the defendant that the whistle had been blown."

We are therefore of the opinion that in the case before us there was evidence of some probative value that the whistle had not been sounded and the bell had not been rung at the time when required by statute, that this evidence conflicted with the testimony of defendant's witnesses that the whistle had been sounded and the bell had been rung at the proper time, that reasonable minds might differ in their conclusions based on this evidence and that it was for the jury to determine whether defendant had performed its statutory duties with reference to these warning signals. When submitted it was then for the jury to determine the credibility and weight to be given to the conflicting testimony.

The question of whether warning signals had been given being thus for the jury, it also became a question for the jury, if it found no signals to have been given, to determine whether the speed of the train constituted negligence on the part of the defendant in view of such circumstance and the other circumstances of this case.

Of course, the court would not be required, even in view of the foregoing, to submit the case to the jury, if the uncontradicted evidence showed the plaintiff to be guilty of contributory negligence as a matter of law, and it appears from the statement of the court made when sustaining the motion for a directed verdict that such may have been its view. However, it also appears therefrom that the trial court felt with reference to contributory negligence that the plaintiff had the duty to "look and listen for approaching trains before crossing and in a manner that will make the looking and listening effective." That rule of conduct is one ordinarily applied to a driver but not applied to a guest passenger. Nor can it here be applied to the driver and imputed to plaintiff passenger for there was no evidence whatever that the driver and plaintiff passenger were engaged in a joint enterprise, as defined by the Supreme Court in the case of *Bloom* v. *Leech, Admr.,* 120 Ohio St., 239, 166 N. E., 137, as follows:

"A 'joint enterprise' within the law of imputed negligence is the joint prosecution of a common purpose under such circumstances that each member of such enterprise has the au-

thority to act for all in respect to the control of the agencies employed to execute such common purpose.''

See, also, *Bailey* v. *Parker,* 34 Ohio App., 207, 170 N. E., 607.

In the case of *Hocking Valley Ry. Co.* v. *Wykle, Jr., a Minor,* 122 Ohio St., 391, 171 N. E., 860, it was held:

''One riding as a guest in an automobile does not assume the responsibilities of the driver, and the driver's negligence may not be imputed to him. He is required to exercise that care for his own safety which persons of ordinary care and prudence are accustomed to exercise under the same or similar circumstances, and that test should be applied in an action wherein he seeks to recover damages for injuries sustained in a collision of such automobile and a railroad train at a grade crossing.''

Judge Hart stated in his opinion in the case of *Bush, Admr.,* v. *Harvey Transfer Co.,* 146 Ohio St., 657, at pages 670 and 671, 67 N. E. (2d), 851:

''Although it is true that a guest in an automobile driven by another is not chargeable with the driver's negligence, he is, nevertheless, under the duty to exercise ordinary care to avoid injury. What conduct is required to comply with this duty must depend upon all the circumstances, a most important one being that he is merely a guest having no control over the management and operation of the vehicle in which he is riding. * * *

''As a general rule, one who is merely a guest in an automobile may rely to some extent, though not absolutely, upon the driver to exercise reasonable care to avoid danger, and, in the absence of unusual circumstances, a guest is not guilty of contributory negligence if he relies upon the skill and ability of the driver and does not take active steps to see that the vehicle is properly operated. Ordinarily, it is not the province or even proper for a guest to warn or interfere with the driver until he discovers that the driver is unskillful, reckless, or has failed to perceive impending danger. * * *''

The Supreme Court held in the case of *Golamb* v. *Layton,* 154 Ohio St., 305, 95 N. E. (2d), 681:

''A passenger riding in one of two automobiles about to collide is under no duty to warn his driver or to attempt to con-

trol such driver's operation of the vehicle, where it appears that everything the passenger could see was equally visible and known to the driver, that there was nothing to indicate to the passenger the danger of a collision until it was imminent, and that there was nothing the passenger could then do to avoid the result."

Tested by the standard of care and rules of conduct relating to a guest passenger expressed in the last three cited cases, there is no evidence in the case before this court on which the lower court could properly conclude as a matter of law that the plaintiff passenger was chargeable with contributory negligence. On the contrary, when so tested, there is no evidence whatever of contributory negligence on the part of plaintiff and the court would have erred had the jury been required or permitted to consider such question.

We conclude, therefore, that there was evidence before the trial court which required the court to submit to the jury the questions of defendant's negligence or lack thereof with reference to the sounding of whistle, ringing of bell, and speed, as hereinbefore discussed, that there was no evidence of contributory negligence on the part of plaintiff, and that the trial court erred in withholding the case from the jury and in directing a verdict in favor of the defendant, and also erred in overruling plaintiff's motion for a new trial, for all of which the judgment of the trial court should be reversed and the cause remanded with directions to the trial court for a new trial and further proceedings according to law.

*Judgment reversed.*

YOUNGER, P. J., and MIDDLETON, J., concur.