**NEW YORK CENTRAL RAILROAD COMPANY, a Corporation, Appellant,**

v.

**Ann CHERNEW, Administratrix of the Estate of Stanley Z. Chernew, Deceased, Appellee.**

No. 16532.

United States Court of Appeals
Eighth Circuit.

Dec. 23, 1960.

Arthur Litz, St. Louis, Mo., for appellant and Wilton D. Chapman and Thomas W. Chapman, St. Louis, Mo., on the brief.

Don B. Sommers, St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

REGISTER, District Judge.

Appellee (hereinafter referred to as plaintiff) brought this action to recover from appellant (hereinafter called defendant) under the wrongful death statute of the State of Ohio for damages resulting from the death of plaintiff's decedent, Stanley Z. Chernew, following a collision on November 5, 1957, between decedent's automobile and defendant's train at the intersection of a grade level railroad crossing and U.S. Highway 40 at a point approximately one mile west of the city of Lewisburg, Ohio. Plaintiff is the mother and administratrix of the estate of decedent. At the location here involved Highway 40 runs in an east-west direction; defendant's tracks cross said highway in a northwest-southeast direction. Plaintiff's decedent was traveling east and, at the crossing described, collided with defendant's northwest bound train. Mr. Chernew died as a result of injuries resulting from said collision.

U.S. Highway 40 in the area involved is a heavily traveled, hard-surfaced two-lane road. On November 5, 1957, it had been raining heavily prior to the accident and, at the time of the accident (approximately 10:30 a. m.), a light rain was falling; also, it was foggy, with visibility reduced to approximately one-quarter mile. At a point about 440 feet west of the crossing there was painted on the surface of the highway, in the eastbound lane, a large white "X", together with the letters "RR"; similar markings appeared on a "target sign" located on the south shoulder of the highway at approximately the same distance from the crossing. When unobstructed, such warning signs were ordinarily visible for a distance of about 200 feet to the west thereof. No signs or warnings appear on the surface of the westbound, or north, lane of the highway. At a point 440 feet west of the crossing, the crossing itself is not visible to a motorist traveling east; it does become visible to such motorist at a point approximately 200 feet west of said crossing. From the surface painted sign, the highway gradually rises to the east, for approximately 250 feet, to the top of a knoll. The vertical rise of the highway within that distance is approximately five and one-half feet. A large, two-story farmhouse is located near the south side of the highway about 200 feet west of the crossing, where the slope of the highway crests. This farmhouse, along with a barn and other out-buildings, obscures an eastbound traveler's view to the southeast. Such view was also obscured, at the time here involved, by trees and a field of tall corn growing on land to the east of the farm buildings, and by weeds. Suspended above the crossing were two lighted amber lights and on each side of the crossing was an old, rather dilapidated "cross-buck" railroad crossing sign. Such amber lights, in the State of Ohio, are commonly used over railroad crossings or dangerous intersections.

Shortly before the accident, decedent had passed an eastbound automobile driven by witness Owen, at a point where the "X" marking on the surface of the highway and "target" sign on the south shoulder were located. The maximum speed limit in Ohio is sixty miles per hour. At the time decedent passed Owen the latter was traveling between 35 and 45 miles per hour and decedent was traveling approximately ten or fifteen miles per hour faster. At the place where Owen was passed, the tips of the "cross-buck" sign and the amber lights were visible. There is no indication that

decedent attempted to slacken his speed until immediately prior to the accident, when Owen saw decedent's brake lights go on, and at about the same instant saw the engine of defendant's train move into the crossing. Decedent's automobile turned to the right, struck the engine, and came to rest on the south side of the highway.

Owen was familiar with the highway and knew the location of the crossing. At and prior to the time of the collision the front windows on Owen's car were lowered four or five inches. He testified he heard no warning by bell, whistle or otherwise of the approach of the train, and did not know the train was in the vicinity until he saw the front end of the engine as it moved onto the crossing just prior to the collision.

The Ohio statute (Section 4955.32, Revised Code) provides in part:

"* * * When an engine in motion and approaching a turnpike, highway, or street crossing or private crossing where the view of such crossing is obstructed by embankment, trees, curve, or other obstruction to view, upon the same line with the crossing, and in like manner where the railroad crosses any other traveled place, by bridge or otherwise, the engineer or person in charge of such engine shall sound such whistle at a distance of at least eighty and not further than one hundred rods from such crossing and ring such bell continuously until the engine passes the crossing. * * "

Members of the train crew testified that the bell and whistle warning signals were given in accordance with the requirements of the statute, and that, in addition, the headlight of the engine was burning. The engineer testified that just prior to the collision the train was traveling 25 to 28 miles per hour, but upon his seeing the collision was imminent, emergency brakes on the train were applied, and the speed reduced, at the time of impact, by about three miles per hour. Decedent's automobile struck the left side

of the engine and knocked off the main air reservoir; the effect thereof was to release the brakes previously set, and the train came to a stop some four to five hundred feet from the collision site.

The evidence established that at 60 miles per hour on wet pavement the shortest distance in which an automobile could be stopped, including reaction time, was 296 feet; at 55 miles per hour the distance would be 250 feet; and at 50 miles per hour the distance would be 215 feet. The evidence further established that on dry, level, concrete pavement the shortest distance within which an automobile traveling 45, 50, 55 and 60 miles per hour can be brought to a "panic" or "emergency" stop (i. e., a stop so sudden as to be without regard for the safety of passengers) is, respectively, 136½ feet, 175 feet, 205½ feet and 244 feet.

After plaintiff rested her case defendant filed a motion for directed verdict which was, after argument, denied by the trial court. At the close of all the evidence defendant again moved for a directed verdict on the grounds that plaintiff had failed to make a submissible case for the jury, and that decedent was guilty of contributory negligence as a matter of law. This motion, too, was overruled, and the jury returned a verdict for plaintiff in the sum of $15,000. Defendant's motion to set aside the verdict and enter judgment in accordance with its motions for a directed verdict was subsequently overruled, and defendant perfected its appeal to this Court.

Plaintiff's cause of action is based upon alleged negligence of the defendant in two respects: (1) Failure on the part of the defendant to provide adequate warning signals of the presence of the railroad crossing, and (2) failure to give an adequate signal by bell or whistle of the approach of the train at the time here involved. Proof was submitted on both theories and the trial court's instructions included the law concerning both. Defendant denied the alleged negligence, and contended that the decedent

was guilty of contributory negligence; the jury was properly instructed as to the law relating to such defense.

It is conceded that defendant was in compliance with the statutory requirements as to the placing of signals warning the traveling public of the crossing. Defendant contends that, as to this phase of the case, all it was required to do was to comply with the requirements of the Public Service Commission of Ohio— that this particular crossing was not extra-hazardous, and that there was no duty to post safeguards in addition to those required by said Commission.

■ The questions raised on this appeal must be determined in accordance with the substantive law of the State of Ohio. Detroit, T. & I. R. Co. v. Yeley, 6 Cir., 165 F.2d 375. The evidence must be construed most strongly against the defendant. Hood v. New York, Chicago & St. Louis R. Co., 166 Ohio St. 529, 144 N.E.2d 104. In this connection defendant contends that failure on its part to do more than required by Ohio statute, or the orders of the Ohio Public Service Commission, cannot be considered as evidence of negligence for the reason that its duty is limited to compliance with the minimum of such statutory or regulatory requirements. Of course, if this is the law in Ohio, then this Court is bound thereby. However, as stated by the Supreme Court in Grand Trunk Railway Company v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485, such contention would be in conflict with fundamental principles of the law of negligence obtaining in many other states. In Ives, supra, at page 427, 12 S.Ct. at page 686 it is said:

"The underlying principle in all cases of this kind which requires a railroad company not only to comply with all statutory requirements in the matter of signals, flagmen, and other warnings of danger at public crossings, but many times to do much more than is required by positive enactment, is that neither the legislature nor railroad commissioners can arbitrarily determine in advance what shall constitute ordinary care or reasonable prudence in a railroad company at a crossing, in every particular case which may afterwards arise. For, as already stated, each case must stand upon its own merits, and be decided upon its own facts and circumstances, and these are the features which make the question of negligence primarily one for the jury to determine, under proper instructions from the court."

Also see Panama Railroad Company v. Pigott, 254 U.S. 552, 41 S.Ct. 199, 65 L. Ed. 400.

The general principle enunciated by the Supreme Court in Ives was expressly determined to be applicable in the State of Ohio by the court in Franklin et al. v. Nowak, 53 Ohio App. 44, 4 N.E.2d 232, 236. After quoting with approval from Ives, the court in Franklin stated:

"In Erie R. Co. v. Weinstein, 6 Cir., 166 F. 271 * * * the United States Circuit Court of Appeals of this circuit followed this case, and said: 'The Ohio statute does not provide that compliance with these crossing signals shall excuse the railroad from taking other precautions, if the particular situation be such as that due care at the particular place and time required other precautions. We think that compliance with such a statute will not exonerate a railway company from the charge of negligence, if the circumstances were such as that common prudence and proper regard for the safety of travelers at such crossing would require other precautions.' "

■ In the comparatively recent (1957) case of Hood v. New York, Chicago & St. Louis R. Co., supra, the Supreme Court of Ohio considered the question of extrastatutory warnings. Therein the court stated, in effect, that it had not theretofore been called upon to speci'fy the rule of law applicable with respec.. to extrastatutory warnings at railroad crossings where no order of the Public Utilities Commission had provided for such warnings. After discussing a number of prior cases decided by the courts

of Ohio, the court therein laid down the following test as being determinative of the question whether, under such circumstances, the railroad has a duty to provide extrastatutory warnings: Should a driver, in the exercise of ordinary care, be able to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements? Conversely, the test might be stated thusly: Is there substantial risk that a driver, in the exercise of ordinary care, might be unable to avoid colliding with a train that is being operated over the crossing in compliance with the statutory requirements? This test was recognized and applied by the court in the case of Gigliotti v. New York, Chicago & St. Louis R. Co., 1958, 107 Ohio App. 174, 157 N.E.2d 447.

In Easterwood v. New York, Chicago & St. Louis R. Co., 1958, 108 Ohio App. 425, 162 N.E.2d 487, the court recognized, approved and applied the principles and test enunciated in Hood, supra. Therein many earlier cases decided by the Ohio courts were considered, and it was ultimately held that the duty of a railroad to provide extrastatutory warnings of the existence of a crossing may result from the existence of hazards over which the railroad has no control.

It is clear, therefore, that, under the law of Ohio, under some circumstances, a railroad company has a duty and may be required to provide more than the statutory warnings. Whether such circumstances exist in the instant case must be determined by the application of the test enunciated in Hood, supra, to the facts appearing of record. As previously indicated, we must construe the evidence most strongly in plaintiff's favor.

The only signs warning eastbound travelers of the existence of the crossing here involved, within stopping distance at the legal speed limit, were the surface painted "X-RR" marking and the "target" sign hereinbefore described. At their location the crossing itself is not visible due to the five and one-half foot rise in the elevation of the highway to the east. It is reasonably foreseeable that, as this highway is a heavily traveled road, one eastbound motorist might overtake and pass another at this precise point, the effect of which would be to completely blot out the view of both the painted sign and the target sign from the passing motorist. The extent of the traffic at this point is indicated by testimony in the record that, within several minutes after the accident, "there was a mile of traffic both ways". There is nothing in the record to indicate that decedent was familiar with this highway or crossing, and the jury may well have determined from the evidence that there was substantial risk to a driver such as decedent, in the exercise of reasonable care for his own safety, in that he might fail to see either the painted surface warning or the target sign. That decedent was in the north lane of the highway when he passed Owen is conclusively established. The evidence establishes that the amber lights did not necessarily indicate the presence of a railroad crossing, that only the very tips of the crossbuck sign were visible from the point of passing, and that the crossing could first be seen only from a point about 200 feet west thereof. However, at that point the vision of an eastbound motorist was obscured by certain permanent structures and trees, corn and weeds, as hereinbefore described. This factor was also reasonably foreseeable on the part of defendant—at least as to the effect of the permanent structures. The evidence conclusively establishes that, weather conditions being what they were at the time here involved, an automobile traveling fifty miles per hour or more could not be stopped short of the crossing after such crossing first came into the motorist's view, and that, even on a dry surface, a motorist traveling within the upper range of the legal speed limit would be unable to bring his automobile to a stop short of the crossing after such crossing first became visible.

Witness Owen testified that because of the obstructions, a driver approaching the crossing from the west could see "down the track" to the right, from a

distance 150 feet west of the rails on the crossing, "not over ten or fifteen feet".

The following quotation from Tamplin v. Pennsylvania R. Co. et al., Ohio App., 51 N.E.2d 736, 738, is singularly applicable to the instant case:

"It is our judgment that the facts thus presented do not require that it be said as a matter of law that he should have seen or have known of the presence of the crossing so as to stop within the range of his vision. It was a disputed question whether or not in the exercise of ordinary care he should have observed the indicia of a railroad crossing so as to inform him that it was in the immediate line of his approach. Reasonable minds could differ upon the answer to the question whether or not he should have known of the presence of the crossing. The answer may not be resolved in favor of the plaintiff as a matter of law, and as the question was one of factual dispute it was properly submitted to the jury, * * * ."

■ We are satisfied that, construing the evidence most strongly in plaintiff's favor, and adhering to the principles and applying the test recognized and approved by the courts of Ohio in the cases heretofore cited, the question of negligence on the part of defendant in allegedly failing to provide adequate warning to approaching motorists of the existence of the crossing here involved was properly submitted to the jury under appropriate instructions by the trial court.

■ Defendant contends that the trial court erred in submitting to the jury the question of whether it was negligent in allegedly failing to give the required warnings of the approach of the train by bell and whistle, and calls our attention to the so-called Ohio "doctrine of incontrovertible facts", and the opinions in Continental Baking Company v. Pennsylvania Railroad Company, 87 Ohio App. 505, 96 N.E.2d 258 and Hicks v. Baltimore & Ohio Railroad Co., 160 Ohio St. 307, 116 N.E.2d 307. In the cited cases,

as in the instant case, employees of the defendant railroad testified positively as to the ringing of the bell and the blowing of the whistle. Referring to the doctrine of incontrovertible facts, the court in Hicks stated, at page 309, 116 N.E.2d:

"In a railroad crossing collision case, negative testimony is proper where it tends to prove that bells were not rung or whistles sounded. Such testimony may be by witnesses who were near the crossing at the time of the accident and to the effect that they did not hear any bell or whistle. * * * However, such testimony to have any probative value must be by witnesses who were in a position to know or hear. * * "

The record reveals that plaintiff's witness Owen was familiar with the highway, knew of the existence of the crossing, was traveling in such a direction that he soon expected to pass over it, had both front windows of his automobile lowered four or five inches, had his car radio turned off, was looking in the direction of the crossing and saw the collision, but that he heard no whistle or bell and did not see any part of the train until the engine moved onto the crossing immediately prior to the accident. While Owen was not asked specifically whether he listened for the bell or whistle, he was within easy hearing distance, was in a position to hear, and his own safety depended upon such hearing. Diebly v. New York, Chicago & St. Louis R. Co., 108 Ohio App. 381, 162 N.E.2d 142, 148-149. We deem it unnecessary to comment upon the testimony of witness Penquite (who was driving west on Highway 40, east of the crossing, and who had the car radio playing and the windows of his automobile closed, and who also testified that he did not hear a bell or whistle) because clearly Owen's testimony was competent evidence, of some probative value, which required this issue to be submitted to the jury.

Defendant strenuously contends that decedent Chernew was guilty of contributory negligence as a matter of law and that plaintiff is therefore barred from

recovering damages in this action. It is undisputed that under Ohio law there can be no recovery if plaintiff's decedent was negligent and such negligence contributed in any degree to cause the accident.

As support for this contention defendant cites numerous opinions of Ohio courts. Each has been given careful consideration by this court and we believe all thereof are readily distinguishable from the instant case upon the facts.

Croke v. Chesapeake & Ohio Ry. Co. et al., 86 Ohio App. 483, 93 N.E.2d 311, involved a collision caused by a motor vehicle being driven into the side of a railroad locomotive moving over a grade crossing in the open country at night. In finding the driver of the motor vehicle negligent as a matter of law, the court therein commented, at page 315 of 93 N.E.2d:

> "There is no evidence that the driver of the automobile exercised any care at all for his own safety or that of his passengers. Plaintiff had warned him of the danger; he had been over the crossing before and knew of its location * * * ."

The court continued, at page 317:

> "It is undisputed that the terrain between the highway and the railroad was open country with no obstruction to the vision of travelers on the highway. It is also undisputed that both plaintiff and the driver of the automobile knew of the presence of the railroad crossings on this highway. She had called his attention to that fact. He had driven over the crossing on previous occasions. The train approached around the bend toward the crossing with its bright headlight burning at a speed less than that of the automobile. The locomotive did not collide with the automobile. The automobile hit the side of the locomotive. In this situation, the failure to ring the bell, the only act of negligence supported by any evidence found by the jury, could not have been the proximate cause of plaintiff's injuries."

In Croke, therefore, not only did the plaintiff fail to establish any negligence on the part of the defendant which proximately caused the injuries for which damages were sought, but the court properly concluded that the sole proximate cause thereof was the automobile driver's negligence.

Boles v. Baltimore & Ohio R. Co., 168 Ohio St. 551, 156 N.E.2d 735, decided by the Supreme Court of Ohio in 1959, is cited as one of the recent cases supporting defendant's contention. The court in Boles, by reference, approved and followed the decisions in Detroit, Toledo & Ironton Railroad Company v. Rohrs, 114 Ohio St. 493, 151 N.E. 714, and Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 24 N.E.2d 597. As stated in Boles, the court in Patton compiled and summarized the line of cases involving the question here being considered.

In Patton plaintiff's decedent was a truck driver who had used the crossing frequently and was familiar with it; the atmosphere was heavy and cloudy, but lights could be seen a distance of a half-mile or more. The evidence was undisputed that one nearing the crossing from the direction in which decedent approached had an unobstructed view of an oncoming train for a substantial distance. From the facts developed, the court therein concluded that the testimony that defendant's whistle and bell were sounded in accordance with the requirements of the statutory authority, and that the engine headlight was plainly visible at a distance of not less than 350 feet in advance of the engine, must be taken to be true. The court therefore held that, had the decedent looked and listened at a point where such looking and listening would have been effective, he could have easily stopped his truck in advance of the crossing.

At page 739, 156 N.E.2d, in the Boles case, the following testimony by the plaintiff may be found:

> "I crossed that crossing as much as four days a week. Sometimes I'd cross it every day. * * *

"I knew where the crossing was." Also at page 739, appear the following questions and answers:

"Q. Each time you looked to the north on all of the times you have described, was your speed such that by the application of your brakes on that morning in the condition you knew them to be that the automobile could be brought to a stop before it reached the railroad tracks? A. I could have.

"Q. You could have stopped it at any time, is that correct? A. (Nods affirmatively.)

\* \* \* \* \* \*

"Q. Was there anything between your automobile and the railroad tracks in the direction in which you made observation to the north which prevented you from seeing the railroad tracks or railroad train? A. What do you mean by that? There wasn't nothing to keep me from seeing the train.

"Q. There was no object between you and the train or the railroad tracks, was there? A. There was no object between me and the tracks."

In Boles the court referred to the quoted testimony as being comparable to that in Rohr, supra.

The evidence in Inks v. Jones & Laughlin Steel Corporation et al., Ohio App., 160 N.E.2d 146, discloses that plaintiff truck driver knew of the railroad track and its location; that he stopped his truck two or three feet in advance of the rails; that he stopped because he thought there might be some risk that a train was coming; that his view was unobstructed, though there was some smog and smoke in the air, and that he saw nothing; and that after proceeding about eight feet onto the track he was struck by defendant's engine. The court concluded that plaintiff was guilty of contributory negligence as a matter of law.

In Gigliotti, supra, the court, after concluding there was an absence of probative facts to support a conclusion of negligent conduct on the part of the railroad company as a proximate cause of the accident, quoted excerpts from plaintiff's testimony with reference to the question of whether he was guilty of contributory negligence as a matter of law. Such testimony established that plaintiff was thoroughly familiar with the highway, abutting properties and railroad crossing, having driven over that particular stretch of highway almost daily for a period of fifteen years. It further established that he had an open, unobstructed view for two thousand feet along the highway in the direction from which the train approached. Plaintiff did not stop, look or listen until he saw the engine on the track, and his testimony was that he was traveling 45 miles per hour up to the time he was 75 feet from the crossing, at which time he first saw the train and that it was then too late to stop. The court stated that had plaintiff looked and listened before approaching the track, in such a manner as to be effective, he could have seen the locomotive and could have stopped in safety. Plaintiff was held to be guilty of contributory negligence as a matter of law.

It becomes obvious, upon a reading of all the cases cited by defendant in support of its arguments on this point, that the Ohio courts placed great importance upon two factors. The first is the familiarity with and knowledge of the existence and location of the crossing on the part of the driver of the motor vehicle involved; the second is the fact that the driver of the motor vehicle had a clear and unobstructed view of the track and approaching train for a distance which was adequate within which to bring his vehicle to a complete stop in advance of the crossing. In such cases the evidence firmly established that had such driver exercised his sense of sight and hearing within a reasonable distance from the track, and at a point where his view was unobstructed, he could have stopped his vehicle well in advance of the crossing. It is also of in-

terest that in virtually all of such cases, the facts disclose a complete absence of negligence on the part of the defendant railroad, or at least an absence of negligence on its part which proximately caused the accident and resulting injuries complained of. In other words, in virtually all of such cases the evidence established that the sole cause of the accident was negligence on the part of the driver of the motor vehicle.

The important consideration and great weight given by the courts of Ohio to evidence establishing lack of knowledge of the existence and location of the crossing, and obstructions to visibility in approaching the crossing by way of buildings, weeds, trees, etc., in considering the question of contributory negligence on the part of the driver of the motor vehicle, is manifest in the case of Loos v. Wheeling & L. E. Ry. Co. et al., 60 Ohio App. 527, 22 N.E.2d 217.

Defendant's contention, in effect, that in considering decedent's conduct for the purpose of determining whether he was guilty of contributory negligence as a matter of law, we should test it by the same standard as that which is applicable to the conduct of witness Owen is fallacious for two reasons. The evidence conclusively establishes that Owen was thoroughly familiar with the existence and location of the crossing, and that decedent was not aware of it; also, that Owen was in a position to see and had an unobstructed view of the surface painted railroad "X" on the eastbound (south) lane of the highway and the target sign on the shoulder thereof, both of which were some 440 feet west of the crossing.

In this regard, the court in the case of Zivkoff v. Pennsylvania R. Co., 1948, 86 Ohio App. 84, 90 N.E.2d 148, forcibly and succinctly expressed itself. At page 151 of 90 N.E.2d thereof, after considering Patton, supra, and other similar cases, the court stated:

"The facts of the case of Patton, Admx., v. Pennsylvania R. Co., supra, are similar to those in the case at bar but with some important

differences. In the Patton cases, the driver was thoroughly familiar with the crossing; here there was no evidence that he was. In that case there were warning devices; here there were none. There is also a substantial difference in the view of the driver approaching a crossing. * * *"

Further, at page 153:

"There is a difference in the standard which must be applied when we determine what is ordinary care to the actions and reactions of one approaching a railroad crossing who is familiar with that crossing and a stranger who is unfamiliar therewith. In the first case having an awareness of approaching a dangerous railroad crossing one should be looking and listening for certain things and have his mind set to interpret those sights and sounds and sensations which are indications of danger. In the latter case the awareness of danger being absent until that fact is suddenly impinged upon his consciousness, his reaction time in co-ordinating and interpreting the evidence of his senses is greater. In the great majority of crossing accident cases which this court is familiar with, when a directed verdict has been upheld, either the plaintiff was thoroughly familiar with the crossing, or it was adequately protected by a watchman, or by lights and sound devices, or it was daylight or in plain view, or there were eyewitnesses to the conduct of the injured party. * * *"

In Yeley, supra, a judgment in favor of plaintiff was reversed. However, the majority opinion stressed the fact that plaintiff was completely familiar with the crossing and had gone over it every day for some sixty days; that plaintiff testified he stopped his car eight or ten feet from the tracks and looked both ways and listened; that the car windows were down; and, neither hearing nor seeing an approaching train, he started across the intersection in second gear;

that when he was in the middle of the track he discovered the train only three feet from him; and that a clear view of the track in the direction from which the train approached could be obtained at a point five or ten feet from the nearest rail. From all these facts the court concluded it apparent that, had the plaintiff looked at the point he testified he did look, he would have seen the approaching train and, at the speed and in the gear at which his auto was moving, he could readily have stopped it in a position of safety. Many of the opinions of the Ohio courts in cases involving this particular issue are carefully analyzed in Yeley.

After discussing Rohrs, supra, and Yeley, supra, the court in Erie R. Co. v. Lade, 6 Cir., 1954, 209 F.2d 948, 950, stated:

"In the application of legal principles, long experience has demonstrated that there are few absolutes and that every case must be decided upon its peculiar facts. The law in Ohio is not otherwise. While an automobile driver is under a duty to look and listen before he crosses a railroad track *of whose existence he is aware,* it is not his absolute and unqualified duty to stop before he goes on the track, unless his looking and listening discloses the approach of a moving train. * * *" (Emphasis added.)

■ In granting the plaintiff's evidence its most favorable construction and indulging all reasonable inferences in her favor, we find substantial support in the evidence of a finding by the jury of the following facts:

1) As plaintiff's decedent approached the location of the surface painted railroad "X" on the highway, and the target sign on the shoulder thereof, both such warnings were obscured by the position of witness Owen's automobile, and the latter's automobile also obstructed decedent's view of said warnings at the time he (decedent) passed Owen's automobile;

2) At the crest of the rise (some 200 feet west of the crossing) opposite the farmhouse, decedent's view to the southeast was obscured, for a considerable distance, by a barn, other outbuildings, the farmhouse itself, trees, weeds and corn;

3) The approach of defendant's train was not disclosed by the sounding of any bell or whistle warning;

4) Plaintiff's decedent, in the exercise of reasonable care for his own safety, was unaware of the existence of the crossing until he reached a point on the highway when it was impossible to avoid the collision; and

5) Decedent was not guilty of any negligence which was a proximate cause of the accident.

In Sturgell v. Detroit, Toledo & Ironton Railroad Co., 107 Ohio App. 5, 156 N.E.2d 477, 482, the court summarily stated:

"We do not feel that the law imposes an absolute duty upon the travelling public to see that which cannot be seen, or to hear a sound that has not been actuated. Whether one could see is a question of fact. Whether there was a sound to hear is a question of fact. These issues of fact have been decided in the proper forum, the jury, and we have not the authority or right to meddle."

Also see Truex v. New York Central Railroad, 106 Ohio App. 367, 151 N.E.2d 49, and Tamplin, supra.

The Supreme Court of the United States, in Lavendar v. Kurn et al., 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916, in considering the limited function of an appellate court under the present circumstances, used the following language:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required

on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. *Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear.* But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." (Emphasis added.)

Also see Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

For the reasons hereinbefore stated, the judgment is

Affirmed.

VAN OOSTERHOUT, Circuit Judge (specially concurring).

I agree with Judge Register's conclusion that sufficient evidence of defendant's failure to comply with the statute requiring the sounding of the whistle and the ringing of the bell is present to make a jury question on defendant's negligence.

The contributory negligence issue causes me considerable difficulty. If the plaintiff's decedent had actual knowledge of the presence of the railroad crossing, or was chargeable with such knowledge, by reason of the presence of warning signs complying with the requirements of the statute and the regulations of the Public Service Commission of Ohio, I am convinced that under the facts here established the motorist was guilty of negligence as a matter of law. See Detroit, T. & I. R. Co. v. Yeley, 6 Cir., 165 F.2d 375; New York Central Railroad Co. v. Delich, 6 Cir., 252 F.2d 522, particularly the dissenting opinion of Judge Stewart, now Mr. Justice Stewart, at page 527 and the cases therein cited.

There is no evidence that decedent was familiar with the crossing. A motorist is at least charged with the obligation of using reasonable care to observe the various safety signs on and adjoining the highway, such as speed restriction signs, danger signs, no-passing signs, and railroad crossing signs. I believe that the large railroad crossing sign painted on the roadway and the "target" sign on the side of the road, both located some 440 feet distant from the crossing, were sufficiently clear and conspicuous to be observed in the exercise of ordinary care by an approaching motorist for a considerable distance and in sufficient time to permit him to avoid danger. The fact that my colleagues think otherwise persuades me that this may be a question upon which minds might reasonably differ, and hence I shall not dissent.